THOMAS, Judge.
 

 Loma Alta Property Owners Association, Inc. (“LAPOA”), sued Carol Mahoney in the Baldwin District Court, claiming breach of contract, account stated, and a property-owners-association lien on real estate occupied by Mahoney. LAPOA alleged that Ms. Mahoney was the owner of unit C-l in Loma Alta Townhomes; that Ms. Mahoney was, therefore, bound by an agreement contained within the condominium declaration for the Loma Alta subdivision to pay property-owners-association fees, assessments, and late charges; and that Ms. Mahoney had failed to pay those fees, assessments, and charges. LAPOA asserted that it was entitled to recover from Ms. Mahoney damages, including late fees, interest, costs, and an attorney fee, and to have a lien on the real estate occupied by Ms. Mahoney.
 

 Ms. Mahoney answered the complaint, admitted that she “owe[d] some money, but not the total amount claimed by [LA-POA],” and asserted that she was entitled to a setoff because LAPOA had failed to make needed repairs on the unit. On April 11, 2006, the district court entered a judgment in favor of LAPOA in the amount of $5,390, plus costs and an attorney fee of $500. Ms. Mahoney appealed that judgment to the Baldwin Circuit Court on April 25, 2006, for a trial de novo.
 

 On May 19, 2006, Ms. Mahoney filed an amended answer in the circuit court, generally denying the allegations of LAPOA’s complaint and asserting, among other things, that she did not have a contract with LAPOA. In addition, Ms. Mahoney asserted a claim under the Alabama Litigation Accountability Act (“ALAA”), § 12-19-270 et seq., Ala.Code 1975. On December 21, 2006, LAPOA amended its complaint, naming Ms. Mahoney’s former husband, Joseph Mahoney, as a defendant.
 
 *1132
 
 LAPOA alleged that Mr. Mahoney was the “owner” of unit C-l in Loma Alta Town-homes and that Ms. Mahoney was a “resident” of the unit. LAPOA also added a claim alleging that, by virtue of the foreclosure of its property-owners-association lien, it was entitled to have Ms. Mahoney “evicted” from unit C-l.
 

 The circuit court conducted a bench trial on January 26, 2007, at which only one witness — Mary Garey, the secretary/treasurer of LAPOA — testified. Garey explained that the property-owners-association fees and assessments represent the unit owners’ proportionate share of the cost of maintaining and preserving the common areas of the condominium. Garey testified that Ms. Mahoney had resided in unit C-l of the condominium since March 2000 and that she had paid some of the fees and assessments but that she had stopped paying, contending that she was entitled to set off against the balance the cost of needed repairs that LAPOA had failed to make on the unit Ms. Mahoney was occupying. Garey stated that, according to the condominium declaration, repairs to a unit are the responsibility of the individual unit owner, not LAPOA. Garey identified a document showing the past-due fees and assessments that, LAPOA claimed, were owed by Ms. Mahoney. Garey testified that Ms. Mahoney had never returned the invoices for fees and assessments to Garey with a request that the invoices be forwarded to someone else. Nor, according to Garey, had Ms. Maho-ney ever informed LAPOA that she was
 
 not
 
 the owner of the unit in which she resided. Garey testified that LAPOA, by virtue of its contract with the owner of each unit, has a lien on any unit for which there are unpaid fees and assessments. Garey said that LAPOA had foreclosed its lien on unit C-l.
 
 [1]
 

 On cross-examination, Garey acknowledged that the owner of each unit is solely responsible for payment of the property-owners-association fees and assessments. Garey admitted that LAPOA had no deed showing that Ms. Mahoney was the owner of the unit in which she resided, that LA-POA had no contract with Ms. Mahoney, and that LAPOA had no document stating that someone other than the owner of the unit was responsible for payment of the fees and assessments on the unit that Ms. Mahoney occupied. On redirect examination, Garey affirmed the truth of the following inquiry by LAPOA’s counsel: “We’re simply asking [the circuit court] to confirm that we’ve got a judgment on this unit, whether it’s owned [by] Ms. Mahoney or whoever it is, because that unit has not paid any dues and assessments, is that right?”
 

 The circuit court admitted the following documentary evidence offered by LAPOA: (1) the condominium declaration for the Loma Ata subdivision; (2) a statement of fees, assessments, and late charges sent by LAPOA to Ms. Mahoney on January 24, 2007, indicating a balance due of $6,150; and (3) a “Statement of Lien” filed in the Baldwin Probate Court on October 4, 2004, naming Carol Mahoney as the owner of “Lot C-l, Loma Alta, as recorded in Map Book 11, Page 176, in the Office of the Judge of Probate, Baldwin County, Alabama.”
 

 At the conclusion of Garey’s testimony, LAPOA rested and Ms. Mahoney’s counsel
 
 *1133
 
 moved for a “directed verdict,”
 
 [2]
 
 arguing:
 

 “[TJhere’s been no proof of ownership [by] my client, Carol Mahoney, ... or that she’s bound by any contract that they have failed to present in court showing that she’s responsible for anything ...
 

 “[LAPOA has] gone against the wrong person, and that’s why we move for a directed verdict and ask for award of reasonable attorney’s fees for having to fight this.”
 

 The circuit court denied the motion. On April 13, 2007, the court entered a judgment in favor of LAPOA and against Ms. Mahoney in the amount of $6,279.10 and awarded LAPOA an attorney’s fee of $5,000. The court did not rule on Ms. Mahoney’s ALAA counterclaim, but we conclude that it was implicitly denied.
 
 See Harris v. Cook,
 
 944 So.2d 977, 981 (Ala. Civ.App.2006). On the same day, the circuit court entered a default judgment for the same amount in favor of LAPOA and against Joseph Mahoney. Ms. Mahoney filed a timely notice of appeal to this court on May 15, 2007.
 

 Standard of Review
 

 “[T]he ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of the law to the facts. ‘[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.’
 
 Griggs v. Driftwood Landing, Inc.,
 
 620 So.2d 582, 586 (Ala.1993).”
 

 Wattman v. Rowell,
 
 913 So.2d 1083, 1086 (Ala.2005).
 

 “ ‘Where the facts are not in dispute and we are presented with a pure question of law, as here, this Court’s review is de novo.’
 
 Christian v. Murray,
 
 915 So.2d 23, 25 (Ala.2005) (citing
 
 State v. American Tobacco Co.,
 
 772 So.2d 417, 419 (Ala.2000),
 
 Ex parte Graham,
 
 702 So.2d 1215, 1221 (Ala.1997), and
 
 Beavers v. County of Walker,
 
 645 So.2d 1365, 1372 (Ala.1994)).”
 

 Ex parte Barnett,
 
 978 So.2d 729, 731 (Ala.2007).
 

 The Breach^-of-Contract Claim
 

 The elements of a breach-of-contract claim are “ ‘(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiffs] own performance under that contract, (3) the defendant’s nonperformance, and (4) damages.” ’
 
 Childersburg Bancorporation, Inc. v. Peoples State Bank of Commerce,
 
 962 So.2d 248, 253 (Ala.Civ.App.2006) (quoting
 
 Southern Med. Health Sys., Inc. v. Vaughn,
 
 669 So.2d 98, 99 (Ala.1995)). LA-POA presented no evidence of a contract binding Ms. Mahoney to pay the fees, assessments, and late charges on unit C-l. The condominium declaration for the Loma Alta subdivision provides, in Article VII, entitled “Covenant for Maintenance Assessments,” the following:
 

 “Section 1. Creation of the Lien and Personal Obligation of Assessments. The Declarant, for each Lot owned within the properties, hereby covenant, and
 
 each Owner of any lot by acceptance of a deed therefor, whether or not it shall be expressed, in such deed, is deemed to covenant and agree to pay the Association (1) annual assessments or charges, and,
 
 (¾)
 
 special assessments for capital improvements to the Comm,on Area, such assessments to be established and
 
 
 *1134
 

 collected as hereinafter provided.
 
 The annual and special assessments, together with interest, costs and reasonable attorney’s fees, shall be charged on the land and shall be a continuing lien upon the property against which each such assessment is made.
 
 Each such assessment, together with interest, costs and reasonable attorney’s fees, shall also be the personal obligation of the person who was the Owner of the property at the time when the assessment fell due.
 
 The personal obligation for delinquent assessment shall not pass to his successors in title unless expressly assumed by them.”
 

 (Emphasis added.)
 
 See also
 
 § 35-8-13, Ala.Code 1975 (providing that “[a] unit owner shall, by acceptance of title, be conclusively presumed to have agreed to pay his proportionate share of [common expenses and limited common] expenses accruing while he is the owner of a unit”). “Owner” is defined in Article I, § 2, of the condominium declaration as “the record owner ... of a fee simple title to any lot which is a part of the [Loma Alta subdivision].”
 

 LAPOA’s amended complaint named Joseph Mahoney, not Ms. Maho-ney, as the “owner” of the property in question and designated Ms. Mahoney as a “resident” on the property. LAPOA apparently conceded that Joseph Mahoney was the owner of the property, but it conducted the litigation as if it were entitled to proceed either against Ms. Maho-ney, a nonowner, because she was residing on the property, or against the unit itself “in rem” because “that unit has not paid any dues and assessments.” The condominium declaration, however, makes it clear that LAPOA’s remedy is strictly against the owner. As Article VII, § 7, of the declaration, entitled “Effect of Nonpayment of Assessments: Remedies of the Association,” states: “No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his lot.”
 

 At trial, LAPOA’s only witness acknowledged that LAPOA had no evidence indicating that Ms. Mahoney was the owner of the property. LAPOA failed to meet its burden of proving that Ms. Mahoney was the owner of the property and, therefore, that she had contracted to pay the fees and assessments with respect to the property. The circuit court erred in entering a judgment against Ms. Mahoney and in favor of LAPOA on its breach-of-contract claim.
 

 The Account-Stated Claim
 

 In
 
 Ayers v. Cavalry SVP I, LLC,
 
 876 So.2d 474 (Ala.Civ.App.2003), this court discussed the nature and elements of an account-stated claim:
 

 “ ‘An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. It is as if a promissory note had been given for the balance due.
 

 “ ‘A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. The debtor’s admission to the correctness of the statement and to his liability thereon can be express or implied. An account rendered, and not objected to within a reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account.’ ”
 

 
 *1135
 
 876 So.2d at 477 (quoting
 
 University of South Alabama v. Bracy,
 
 466 So.2d 148, 160 (Ala.Civ.App.1985)). “An ‘account’ is a general term which covers an item of indebtedness,
 
 by contract, express or implied.” Dees v. Self Bros.,
 
 165 Ala. 225, 228, 51 So. 735, 736 (1910) (emphasis added).
 
 See also Morrisett v. Wood,
 
 128 Ala. 505, 507, 30 So. 630, 631 (1900) (stating that an account arises “out of contract or some fiduciary relation” between the parties).
 

 Citing
 
 CIT Group/Equipment Financing, Inc. v. Roberts,
 
 885 So.2d 185 (Ala.Civ.App.2003), LAPOA argues that it had an implied contract with Ms. Mahoney to pay the property-owners-association fees and assessments because, it says, Ms. Maho-ney, by living in a condominium unit, received the benefits of the services LAPOA provided to maintain the common areas. In
 
 GIT Group,
 
 this court explained that recovery on a theory of quantum meruit occurs when a contract is implied. The court stated:
 

 “ ‘ “ ‘There are two kinds of implied contracts — those implied in fact and those implied in law. Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment.’ ” ’ ”
 

 885 So.2d at 189 (quoting
 
 Associates Commercial Corp. v. Roberts,
 
 844 So.2d 1256, 1261 (Ala.Civ.App.2002), quoting in turn
 
 Phillips v. Fuller,
 
 814 So.2d 885, 888 (Ala.Civ.App.2001), quoting in turn
 
 Green v. Hospital Bldg. Auth. of Bessemer,
 
 294 Ala. 467, 470, 318 So.2d 701, 704 (1975)). In
 
 Mantiply v. Mantiply,
 
 951 So.2d 638 (Ala.2006), our supreme court explained:
 

 “In order to succeed on a claim based on a theory of quantum meruit, the plaintiff must show that it had a reasonable expectation of compensation for its services.
 
 Utah Foam Prods., Inc. v. Polytec, Inc.,
 
 584 So.2d 1345 (Ala.1991). However, ‘[w]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails.’
 
 Brannan & Guy, [.P.C. v. City of Montgomery,]
 
 828 So.2d [914] at 921 [ (Ala.2002) ]. The existence of an express contract on a given subject generally excludes an implied agreement on the same subject.
 
 Vardaman v. Florence City Bd. of Educ.,
 
 544 So.2d 962 (Ala.1989).”
 

 951 So.2d at 656.
 

 Because LAPOA had an express contract
 
 with the owner
 
 of unit C-l and LAPOA had a reasonable expectation of compensation
 
 from the owner,
 
 its argument as to an implied contract with Ms. Mahoney is unavailing. A promise to pay for services is not implied when, at the time the services were rendered, it was agreed that the payment was to be made by some other party. 66 Am.Jur.2d
 
 Restitution and Implied Contracts
 
 § 48 (2008).
 
 See Comp & Soft, Inc. v. AT & T Corp.,
 
 252 S.W.3d 189, 196 (Mo.Ct.App.2008) (holding that express contract governed with respect to source of payment and “preclude[d] the inference of an alternate implied contract to support a claim for quantum meruit”).
 
 Cf. State ex. inf. Danforth v. Kansas City Firefighters Local No. 42, AFL-CIO,
 
 585 S.W.2d 94 (Mo.Ct.App.1979) (holding that, when governor’s executive order called out the National Guard to perform the duties of striking firefighters and provided that National Guard would be paid with state funds, the State had no expectation of recovering its costs from firefighters’ union).
 

 Because LAPOA presented no evidence indicating either that it had an express contract with Ms. Mahoney or that it had a reasonable expectation of compensation
 
 *1136
 
 from Ms. Mahoney on an implied contract, the circuit court erred by entering a judgment against Ms. Mahoney and in favor of LAPOA on the account-stated claim.
 

 The Lien Claim,
 

 Section 35-8-17, Ala.Code 1975, provides, in pertinent part:
 

 “The [property owners’] association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses, limited common expenses or otherwise, together with interest thereon and, if authorized by the declaration or bylaws, reasonable attorney’s fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit,
 
 the name of the record owner,
 
 the amount due, and the date when due.”
 

 (Emphasis added.) The “Statement of Lien” that LAPOA filed in the Baldwin Probate Court on October 4, 2004, naming Ms. Mahoney as the owner of lot C-l is inconsistent with its amended complaint filed on December 21, 2006, naming Ms. Mahoney’s former husband, Joseph Maho-ney, as a defendant in the lawsuit and listing him as the owner of unit C-l. Moreover, LAPOA apparently conceded at trial and on appeal that Ms. Mahoney is not the record owner of the unit. We therefore conclude that LAPOA failed to prove that it was entitled to “evict” Ms. Mahoney from the unit.
 

 Ms. Mahoney’s motion to strike LA-POA’s motion to supplement the record on appeal and/or to reverse the circuit court’s order granting the motion to supplement the record is denied.
 

 The judgment of the Baldwin Circuit Court is reversed, and the cause is remanded with instructions to adjudicate Ms. Mahoney’s ALAA claim.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Section 35-8-17(4), Ala.Code 1975, a part of a chapter entitled ''Condominium Ownership,” provides that ”[l]iens for unpaid assessments may be foreclosed by an action brought in the name of the [property owners'] association in the same manner as a foreclosure of a mortgage on real property."
 

 [2]
 

 . In actions tried without a jury, the proper motion is one for a judgment on partial findings, pursuant to Rule 52(c), Ala. R. Civ. P.