THOMAS, Judge.
 

 Carol Mahoney appeals from a judgment of the Baldwin Circuit Court denying her request for an attorney’s fee and costs pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala. Code 1975 (“ALAA”). We reverse.
 

 For an understanding of the facts and procedural history underlying this appeal, we quote from this court’s decision in
 
 Mahoney v. Loma Alta Property Owners Ass’n, 4
 
 So.3d 1130, 1131-33
 
 (Ala.Giv.App.2008)(“Mahoney
 
 ”):
 

 “Loma Alta Property Owners Association, Inc. (‘LAPOA’), sued Carol Maho-ney in the Baldwin District Court, claiming breach of contract, account stated, and a property-owners-association lien on real estate occupied by Mahoney. LAPOA alleged that Ms. Mahoney was the owner of unit C-l in Loma Alta Townhomes; that Ms. Mahoney was, therefore, bound by an agreement contained within the condominium declaration for the Loma Alta subdivision to pay property-owners-association fees, assessments, and late charges; and that Ms. Mahoney had failed to pay those fees, assessments, and charges. LA-POA asserted that it was entitled to recover from Ms. Mahoney damages, including late fees, interest, costs, and an attorney fee, and to have a lien on the real estate occupied by Ms. Mahoney.
 

 
 *512
 
 “Ms. Mahoney answered the complaint, admitted that she ‘owe[d] some money, but not the total amount claimed by [LAPOA],’ and asserted that she was entitled to a setoff because LAPOA had failed to make needed repairs on the unit. On April 11, 2006, the district court entered a judgment in favor of LAPOA in the amount of $5,390, plus costs and an attorney fee of $500. Ms. Mahoney appealed that judgment to the Baldwin Circuit Court on April 25, 2006, for a trial de novo.
 

 “On May 19, 2006, Ms. Mahoney filed an amended answer in the circuit court, generally denying the allegations of LA-POA’s complaint and asserting, among other things, that she did not have a contract with LAPOA. In addition, Ms. Mahoney asserted a claim under the Alabama Litigation Accountability Act (‘ALAA’), § 12-19-270 et seq., AlaCode 1975. On December 21, 2006, LAPOA amended its complaint, naming Ms. Ma-honey’s former husband, Joseph Maho-ney, as a defendant. LAPOA alleged that Mr. Mahoney was the ‘owner’ of unit C-l in Loma Alta Townhomes and that Ms. Mahoney was a ‘resident’ of the unit. LAPOA also added a claim alleging that, by virtue of the foreclosure of its property-owners-association lien, it was entitled to have Ms. Mahoney ‘evicted’ from unit C-l.
 

 “The circuit court conducted a bench trial on January 26, 2007, at which only one witness — Mary Garey, the secretary/treasurer of LAPOA — testified. Garey explained that the property-owners-association fees and assessments represent the unit owners’ proportionate share of the cost of maintaining and preserving the common areas of the condominium. Garey testified that Ms. Ma-honey had resided in unit C-l of the condominium since March 2000 and that she had paid some of the fees and assessments but that she had stopped paying, contending that she was entitled to set off against the balance the cost of needed repairs that LAPOA had failed to make on the unit Ms. Mahoney was occupying. Garey stated that, according to the condominium declaration, repairs to a unit are the responsibility of the individual unit owner, not LAPOA. Garey identified a document showing the past-due fees and assessments that, LA-POA claimed, were owed by Ms. Maho-ney. Garey testified that Ms. Mahoney had never returned the invoices for fees and assessments to Garey with a request that the invoices be forwarded to someone else. Nor, according to Garey, had Ms. Mahoney ever informed LA-POA that she was
 
 not
 
 the owner of the unit in which she resided. Garey testified that LAPOA, by virtue of its contract with the owner of each unit, has a lien on any unit for which there are unpaid fees and assessments. Garey said that LAPOA had foreclosed its lien on unit C-l.
 
 [1]
 

 “On cross-examination,. Garey acknowledged that the owner of each unit is solely responsible for payment of the property-owners-association fees and assessments. Garey admitted that LA-POA had no deed showing that Ms. Ma-honey was the owner of the unit in which she resided, that LAPOA had no contract with Ms. Mahoney, and that LAPOA had no document stating that someone other than the owner of the unit was responsible for payment of the fees and assessments on the unit that Ms. Mahoney occupied. On redirect examination, Garey affirmed the truth of the following inquiry by LAPOA’s counsel: ‘We’re simply asking [the circuit court] to confirm that we’ve got a judgment on this unit, whether it’s owned [by] Ms. Mahoney or whoever it is, be
 
 *513
 
 cause that unit has not paid any dues and assessments, is that right?’
 

 “The circuit court admitted the following documentary evidence offered by LAPOA: (1) the condominium declaration for the Loma Alta subdivision; (2) a statement of fees, assessments, and late charges sent by LAPOA to Ms. Maho-ney on January 24, 2007, indicating a balance due of $6,150; and (8) a ‘Statement of Lien’ filed in the Baldwin Probate Court on October 4, 2004, naming Carol Mahoney as the owner of ‘Lot CI, Loma Alta, as recorded in Map Book II, Page 176, in the Office of the Judge of Probate, Baldwin County, Alabama.’
 

 “At the conclusion of Garey’s testimony, LAPOA rested and Ms. Mahoney’s counsel moved for a ‘directed verdict,’
 
 [2]
 
 arguing:
 

 “ ‘[T]here’s been no proof of ownership [by] my client, Carol Mahoney, ... or that she’s bound by any contract that they have failed to present in court showing that she’s responsible for anything ....
 

 “ ‘[LAPOA has] gone against the wrong person, and that’s why we move for a directed verdict and ask for award of reasonable attorney’s fees for having to fight this.’
 

 “The circuit court denied the motion. On April 13, 2007, the court entered a judgment in favor of LAPOA and against Ms. Mahoney in the amount of $6,279.10 and awarded LAPOA an attorney’s fee of $5,000. The court did not rule on Ms. Mahoney’s ALAA counterclaim, but we conclude that it was implicitly denied.
 
 See Harris v. Cook,
 
 944 So.2d 977, 981 (Ala.Civ.App.2006). On the same day, the circuit court entered a default judgment for the same amount in favor of LAPOA and against Joseph Mahoney. Ms. Mahoney filed a timely notice of appeal to this court on May 15, 2007.
 

 This court reversed the judgment in favor of Loma Ata Property Owners Association, Inc. (“LAPOA”), holding that LA-POA had wholly failed to prove that Ms. Mahoney was bound to pay the fees, assessments, and late charges claimed by LAPOA because LAPOA’s contract obligated the owner of the condominium unit to pay those charges and the evidence conclusively established that Ms. Mahoney was not the owner of the unit. This court remanded the cause to the circuit court with instructions to adjudicate Ms. Maho-ney’s ALAA claim.
 

 On remand, the circuit court vacated its judgment in favor of LAPOA, entered a judgment in favor of Ms. Mahoney, and summarily denied Ms. Mahoney’s ALAA claim on September 17, 2008. Ms. Maho-ney filed a postjudgment motion on October 2, 2008, complaining that the circuit court had, “without evidence or testimony entered a verdict for [LAPOA] as to the ALAA claim.” She attached to her motion a foreclosure deed executed by LAPOA’s attorney on October 10, 2006, and filed in the Baldwin Probate Court on October 16, 2006, averring that Joseph Mahoney had been the record title owner of the subject property since May 10, 2005.
 

 Ms. Mahoney specifically requested a hearing on her postjudgment motion. The circuit court set the motion for a hearing on October 21, 2008. The record before us
 
 *514
 
 contains no transcript of the hearing. The parties agree, however, that Ms. Mahoney did not appear, that no evidence was presented, and that counsel for both parties presented oral argument to the trial court at the hearing. On October 28, 2008, the circuit court denied Ms. Mahoney’s post-judgment motion. Ms. Mahoney timely appealed on November 13, 2008.
 

 Discussion
 

 Section 12-19-272(a), Ala.Code 1975, provides that a trial court “shall award” an attorney’s fee against any party “who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part.” In
 
 Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp.,
 
 614 So.2d 409, 417 (Ala.1993), our supreme court held that the determination that an action, claim, or defense is without substantial justification “may be either a factual or a legal determination, depending on the grounds upon which the trial court bases its determination.” The court further explained:
 

 “Section 12-19-271(1), Ala.Code 1975, states:
 

 “ ‘The phrase “without substantial justification,” when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that such action, claim, defense or appeal (including any motion) is frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court.’
 

 “The clear terms of § 12-19-271(1) require that for an action, claim, or defense to be ‘without substantial justification’ it must be either ‘frivolous,’ ‘groundless in fact,’ ‘groundless in law,’ ‘vexatious,’ or ‘interposed for any improper purpose.’ We conclude that the terms or phrases ‘frivolous,’ ‘groundless in fact,’ ‘vexatious,’ and ‘interposed for any improper purpose’ require factual determinations that will be entitled to deference on appeal. See,
 
 Smith v. Smith,
 
 551 So.2d 1024 (Ala.1989). Thus, if a trial court determines that a party’s action, claim, or defense is ‘without substantial justification,’ based on the applicability of any one of these terms or phrases, that determination will not be disturbed on appeal ‘unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’
 
 Cove Creek Development Corp. v. APAC-Alabama, Inc.,
 
 588 So.2d 458, 461 (Ala.1991).
 

 “However, we conclude that the phrase ‘groundless in lav/ clearly calls for a legal determination. Therefore, if the trial court determines that a party’s action, claim, or defense is ‘without substantial justification’ because it is ‘groundless in law,’ that determination will not be entitled to a presumption of correctness. Rather, the appellate courts of this State will test the validity of the trial court’s legal conclusion.”
 

 614 So.2d at 417-18 (emphasis omitted). When a trial court grants an attorney’s fee under the ALAA, it must “specifically set forth the reasons for such award.” § 12-19-273, Ala.Code 1975.
 
 See Pacific Enters.,
 
 614 So.2d at 418.
 

 Referring to the standard of review in ALAA cases, this court, in
 
 Sanderson Group, Inc. v. Smith,
 
 809 So.2d 823, 831 (Ala.Civ.App.2001), stated:
 

 “The supreme court has never discussed the standard of review applicable to the
 
 denial
 
 of an award of fees under the ALAA. However, this court has indi
 
 *515
 
 cated that the requirement that the trial court expressly state the reasons behind its decision does not apply to the denial of a motion pursuant to the ALAA, but only to the grant of such a motion.
 
 See Brashear v. Spinks,
 
 623 So.2d 321, 323 (Ala.Civ.App.1993).”
 

 Because our supreme court has never set out the applicable standard for appellate review of the denial of an ALAA claim, we will discuss
 
 Sanderson Group, Inc. v. Smith,
 
 supra;
 
 Sam v. Beaird,
 
 685 So.2d 742 (Ala.Civ.App.1996);
 
 Warner v. Bullington,
 
 624 So.2d 594 (Ala.Civ.App.1993); and
 
 Brashear v. Spinks,
 
 623 So.2d 321 (Ala.Civ.App.1993) — our own opinions that have addressed a trial court’s denial of an ALAA claim — in order to determine what standard of review has been applied.
 

 In
 
 Brashear v. Spinks,
 
 supra, a former wife filed a contempt petition against a former husband, alleging that the former husband had failed and refused to comply with the terms of the divorce judgment, which incorporated an agreement by the parties to retain joint ownership of two houses, one in Alabama and one in Indiana. The agreement provided that the former wife could live in the Alabama house and that the former husband would be responsible for paying the mortgage payments on both houses. The former wife’s contempt petition alleged that the former husband had refused to allow her to live in the Alabama house and had failed to pay the mortgage payments on the Indiana house, resulting in the foreclosure of the mortgage on that house. The parties later stipulated that the former wife’s petition should be dismissed. The former wife submitted an affidavit acknowledging that the allegations of her petition were untrue; the former husband moved for an attorney’s fee and costs pursuant to the ALAA. The trial court dismissed the former wife’s petition and summarily denied the former husband’s ALAA claim. This court reversed the trial court’s denial of the ALAA claim and instructed the trial court, on remand, to award the former husband an attorney’s fee. We stated:
 

 “The record is comprised solely of the clerk’s record. There was no hearing on the complaint. Even from a review of the record before us, however, it appears that the [former] husband’s request for attorney fees was well grounded. The [former] wife admitted in her affidavit that the allegations of the complaint were untrue. She stated in deposition that she brought the action, over twenty-five years after the divorce decree, because the [former] husband’s ‘mother treated her like a dog.’ It appears that if the [former] wife’s attorney had investigated his client’s charges by a simple title search of the property in question, he would have found that there was no validity to her complaint. Counsel for the [former] husband, by letters and pleading, informed the [former] wife’s counsel of the falseness of her charges soon after the complaint was filed.”
 

 623 So.2d at 323.
 

 In
 
 Warner v. Bullington,
 
 supra, a buyer and a seller entered into an installment sales contract for the purchase of real property. The buyer defaulted on the payments and was notified by the seller to vacate the property. The buyer then sued the seller, alleging a violation of federal Truth-in-Lending Act and state Mini-Code disclosure requirements and seeking rescission of the contract, damages, and an attorney’s fee. The seller complied with the buyer’s request for a rescission of the contract, refunded the payments made by the buyer, and requested that the buyer vacate the premises. The seller also moved to dismiss the buyer’s complaint on the ground that the action was “without
 
 *516
 
 substantial justification” and requested an attorney’s fee. The trial court dismissed the buyer’s complaint and denied the seller’s claim for an attorney’s fee.
 

 This court affirmed, holding that, because the seller acknowledged that the contract lacked certain disclosures required by the Truth-in-Lending Act, it could not say that the buyer’s action was “without substantial justification,” 624 So.2d at 595, and, thus, we held that the trial court had not “abused its discretion” in denying the ALAA claim, 624 So.2d at 596.
 

 In
 
 Sam v. Beaird,
 
 supra, this court affirmed a trial court’s denial of an ALAA claim. In that case, a tenant sued her landlord, alleging, among other things, a violation of the Alabama Deceptive Trade Practices Act, § 8-19-1 et seq., Ala.Code 1975. The trial court entered a judgment in favor of the landlord but denied the landlord’s motion to assess an attorney’s fee under the ALAA. The tenant appealed, and the landlord cross-appealed the denial of his ALAA claim. This court held that, although Alabama law regarding the scope of the deceptive trade practices outlined in § 8-19-5 was not clear, the statutory language left no doubt that “some knowledge of false or deceptive conduct on the part of the wrongdoer” was required, 685 So.2d at 744, and, we held, the evidence would not have supported a finding that the landlord had engaged in knowingly false or deceptive conduct. Nevertheless, we affirmed the denial of the landlord’s ALAA claim because, “[a]lthough [the tenant] did not prevail, her claims were not so lacking in merit as to be frivolous. Further there [was] no evidence that [the tenant] pursued her claims in bad faith or with malicious intent.” 685 So.2d at 745.
 

 In
 
 Sanderson Group v. Inc. v. Smith,
 
 supra, the credit company that had financed a buyer’s purchase of a mobile home filed an action to repossess the mobile home after the buyer had rejected the home upon delivery and had stopped payments. The buyer counterclaimed against the credit company, alleging fraud, and asserted claims against the seller and its agent, alleging fraud, breach of contract, and conversion. The credit company, the seller, and the seller’s agent moved to compel arbitration, and an arbitrator issued an order denying the buyer’s conversion claim but awarding the buyer damages for mental anguish. The seller appealed to the circuit court, and the buyer moved for an attorney’s fee pursuant to the ALAA. The circuit court confirmed the award but denied the buyer’s request for an attorney’s fee. The seller appealed and the buyer cross-appealed.
 

 The ALAA claim at issue in
 
 Sanderson Group
 
 depended upon the correctness of the arbitrator’s award to the buyer of mental-anguish damages.
 

 “The arbitrator stated that his award was based on his conclusion that ‘[the seller’s] late delivery [of the mobile home], coupled with its promises of delivery by Christmas and its insistence that the [buyer] vacate the trade-in, led to substantial disruption of the [buyer’s] family’s] lives for six to eight weeks, with accompanying severe emotional distress to ... [the buyer].’ [The seller] argues that the arbitrator manifestly disregarded the law, which, it says, does not provide for the recovery of mental-anguish damages without either proof that [the buyer] was physically injured or proof that [the buyer] was placed in immediate risk of physical injury.”
 

 809 So.2d at 828. This court noted that the seller’s argument — that the arbitrator did not have the authority to award mental-anguish damages for a
 
 tort
 
 because such damages are not recoverable in the absence of physical injury or the immedi
 
 *517
 
 ate risk of physical injury — “completely disregarded] the well-established law that permits the award of mental-anguish damages in
 
 breach-of-contract
 
 cases involving homes.” 809 So.2d at 831.
 
 See Liberty Homes, Inc. v. Epperson,
 
 581 So.2d 449, 454 (Ala.1991) (stating that, under Alabama law, “[d]amages for mental anguish can be recovered ... “where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering’ ” (quoting
 
 B & M Homes, Inc. v. Hogan,
 
 376 So.2d 667, 671 (Ala.1979))). Holding that the seller’s argument with respect to mental-anguish damages was groundless in law, this court reversed the circuit court’s judgment denying the buyer’s ALAA claim and remanded the cause for the circuit court to determine an appropriate award. 809 So.2d at 832.
 

 A review of the foregoing cases convinces us that the standard of review on appeal from the denial of an ALAA claim is no different from the standard of review on appeal from the grant of an ALAA claim, except that the denial of an ALAA claim is not required to be (and is usually not) accompanied by any statement of reasons by the trial court. Therefore, when the trial court denies an ALAA claim without stating its reasons, this court will reverse only when the record shows indisputably that the “action, claim, or defense” is either “groundless in fact,”
 
 see Brashear v. Spinks,
 
 supra, or “groundless in law,”
 
 see Sanderson Group,
 
 supra.
 

 In the present case, as in
 
 Sander-son Group,
 
 the record shows indisputably that LAPOA’s action against Ms. Mahoney was groundless in law. All four of LA-POA’s claims against Ms. Mahoney— breach of contract, account stated, property owner’s Hen, and eviction — hinged upon its proving that Ms. Mahoney was the owner of the property. LAPOA not only failed to prove that Ms. Mahoney was the owner, but it also presented as its only witness at the circuit-court trial someone who acknowledged “that LAPOA had no deed showing that Ms. Mahoney was the owner” of the property.
 
 Mahoney,
 
 4 So.3d at 1132. LAPOA had access to its own condominium declaration, which
 

 “makes it clear that LAPOA’s remedy is strictly against the owner. As Article VII, Section 7, of the declaration, entitled ‘Effect of Nonpayment of Assessments: Remedies of the Association,’ states: ‘No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his lot.’ ”
 

 Mahoney,
 
 4 So.3d at 1134. In addition, the record conclusively demonstrates that LA-POA knew, before December 21, 2006, when it amended its complaint in the circuit court, that Ms. Mahoney’s former husband, Joseph Mahoney, was the owner of the property because LAPOA’s attorney had, on October 16, 2006, filed in the Baldwin Probate Court a foreclosure deed averring that Joseph Mahoney had been the record title owner of the subject property since May 10, 2005.
 

 To paraphrase what this court held in
 
 Brashear v. Spinks,
 
 623 So.2d at 323:
 

 “It appears that if [LAPOA’s] attorney had investigated his client’s charges by a simple title search of the property in question, he would have found that there was no validity to [LAPOA’s] complaint.”
 

 Because LAPOA’s claims against Ms. Ma-honey were groundless in law, the trial court’s order denying Ms. Mahoney’s ALAA claim is reversed, and the cause is
 
 *518
 
 remanded for the trial court to determine an appropriate award.
 

 Ms. Mahoney’s request for an attorney’s fee on appeal is granted in the amount of $500.
 

 ' REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 " 1Section 35-8-17(4), Ala.Code 1975, a part of a chapter entitled 'Condominium Ownership,’ provides that '[l]iens for unpaid assessments may be foreclosed by an action brought in the name of the [property owners'] association in the same manner as a foreclosure of a mortgage on real property.’
 

 [2]
 

 " 2In actions tried without a jury, the proper motion is one for a judgment on partial findings, pursuant to Rule 52(c), Ala. R. Civ. P.”