MOORE, Judge,
concurring in the rationale in part and concurring in the result.
I concur with the main opinion insofar as it reverses the judgment of the trial court and remands the case with instructions that it be reassigned to another judge, but I do not concur entirely with its rationale for doing so.
In Mahoney v. Loma Alta Property Owners Ass’n, 72 So.3d 649 (Ala.Civ.App.2011) (“Mahoney III”), this court reversed the judgment of the Baldwin Circuit Court (“the trial court”) awarding Carol Mahoney $500 in attorney’s fees under the Alabama Litigation Accountability Act (“the ALAA”), § 12-19-270 et seq., Ala.Code 1975. This court held that, in limiting its award to $500, the trial court (1) had failed to base its judgment on the 12 factors listed in § 12-19-273, Ala.Code 1975; (2) had impermissibly relied on the dissents in Ex parte Loma Alta Property Owners Ass’n, 52 So.3d 518, 525-27 (Ala.2010) (Woodall and Murdock, JJ., dissenting); (3) had impermissibly relied on this court’s award to Mahoney of $500 in attorney’s fees on appeal in Mahoney v. Loma Alta Property Owners Ass’n, 52 So.3d 510 (Ala.Civ.App.2009) (“Mahoney II”); and (4) had erroneously failed to specify its other reasons for limiting the amount of the award based on the “recent submis *920 sions” of the Loma Alta Property Owners Association, Inc. (“LAPOA”). This court reversed the judgment and remanded the case for the trial court “to make a determination of an award pursuant to the ALAA.” Mahoney III, 72 So.3d at 656.
On remand, the trial court entered a new six-page judgment that set forth in detail its reasons for limiting the award of attorney’s fees to $500. In the new judgment, the trial court addressed many of the factors set out in the ALAA, omitted any express reference to the dissents in Ex parte Loma Alta Property Owners Ass’n, omitted any reference to the award of $500 in attorney’s fees to Mahoney on appeal in Mahoney II, and identified the “recent submissions” of LAPOA and their effect on its award. On appeal, Mahoney argues that the new judgment contains multiple erroneous findings of fact relating to the ALAA factors and that the trial court has again relied on impermissible reasons for its award. I agree.
Under the ALAA, a trial court must use its “sound discretion” in determining the amount of attorney’s fees to be awarded. See § 12-19-273. That discretion is to be guided by consideration of various statutory factors, including:
“(1) The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted;
“(2) The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;
“(3) The availability of facts to assist in determining the validity of an action, claim or defense;
“(6) Whether or not issues of fact, determinative of the validity of a parties’ claim or defense, were reasonably in conflict;
“(10) The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action; and
“(11) The extent of any effort made after the commencement of an action to reduce the number of parties in the action.”
§ 12-19-273. Those factors all relate to “whether the plaintiff or the plaintiffs attorney made a reasonable inquiry prior to or after commencement of the suit,” “the availability of facts to the plaintiff or the plaintiffs attorney,” or “whether there were factual issues ‘reasonably in conflict.’ ” Tidwell v. Waldrop, 583 So.2d 243, 244 (Ala.1991) (emphasis added).
In its findings of fact, the trial court essentially determined that LAPOA had undertaken diligent efforts to ascertain the validity of its claims against Mahoney before instituting an action against her and that, throughout the litigation, it had acted with a good-faith belief as to the validity of its claims in maintaining that action. In reaching that factual conclusion, the trial court noted that, before it filed its action in the Baldwin District Court (“the district court”), LAPOA had information indicating that Mahoney owned the condominium unit at issue because (1) Mahoney had resided alone in the condominium unit for many years and (2) Mahoney had consistently paid the fees owed by the condominium owner, without objection or condition. The trial court further found that, in the district-court proceedings, Mahoney had admitted that she owed some money to LAPOA that only the owner of the condominium unit would owe and had not specif *921 ically denied that she owned the condominium unit. Notably, Justice Murdock cited that very same evidence in his dissent in Ex parte Loma Alta Property Owners Ass’n in asserting that LAPOA had not filed a claim against Mahoney that was “groundless in fact.” 52 So.3d at 526-27. In our remand order in Mahoney III, this court specifically ordered the trial court not to consider Justice Murdock’s dissent. By merely deleting the express reference to that dissent, but maintaining its reasoning, the trial court failed to comply with our mandate.
In Mahoney III, this court instructed the trial court not to rely on the dissents in Ex parte Loma Alta Property Owners Ass’n because they did not express the opinion of a majority of our supreme court. 72 So.3d at 653. In Ex parte Loma Alta Property Owners Ass’n, 52 So.3d at 524, the supreme court affirmed this court’s holding in Mahoney II that LAPOA’s action against Mahoney was “groundless in law” because Mahoney indisputably was not the owner of the condominium unit at any time. As this court determined in Mahoney v. Loma Alta Property Owners Ass’n, 4 So.3d 1130 (Ala.Civ.App.2008) (“Mahoney I”), the covenants upon which LAPOA based its claims required only that the “record owner” pay the homeowners’ association dues. 4 So.3d at 1134. Thus, as a matter of law, LAPOA could maintain a valid claim only against that person identified by record as the owner of the property. By its own covenants, LA-POA could not, in good faith, premise its claims on other, less formal, indicia of ownership, as Justice Murdock’s dissent and the trial court maintained.
Nevertheless, because the trial court relied so heavily on Mahoney’s failure to raise her nonownership of the condominium unit at the district-court level, that factor warrants some discussion. In its judgment, the trial court reasoned that LAPOA had a good-faith basis for believing that Mahoney owned the condominium unit because Mahoney did not indicate otherwise during the district-court proceedings, instead raising the issue for the first time during the circuit-court proceedings. The undisputed evidence contradicts that chronology.
The record indicates that Mahoney did not formally raise her nonownership of the condominium unit in the district-court proceedings. Mahoney originally filed her answer, pro se, on November 14, 2005, on a form supplied by the district court; she marked a line on the form indicating that she owed some money to LAPOA, and, in a lower area on the form, she entered a typewritten plea of setoff for LAPOA’s alleged failure to perform repairs on the condominium unit. She later retained an attorney, in January 2006, to represent her. Mahoney’s attorney contacted LA-POA’s attorney, and, based on their conversation, Mahoney’s attorney believed the parties had resolved the case until he received a March 27, 2006, letter from LA-POA’s attorney suggesting otherwise. At that point, because the trial in the district court was scheduled for April 11, 2006, Mahoney’s attorney filed a motion to continue and sent LAPOA’s attorney a letter dated April 7, 2006, requesting an accommodation “so that [he could] also file the appropriate answer and counterclaim.” In that letter, Mahoney’s attorney wrote: “If for some reason the case is not continued as requested, we, of course, will file an appeal.” The district court denied the motion to continue, and Mahoney did not file an amended answer or counterclaim before the scheduled trial.
However, it is undisputed that Mahoney did informally notify LAPOA that she was not the record owner of the condominium unit. The record shows, without dispute, *922 that, on April 11, 2006, just before the commencement of the district-court trial, Mahoney’s attorney hand-delivered to LA-POA’s attorney a copy of the warranty deed showing that Mahoney was not the record owner of the condominium unit. LAPOA’s attorney expressly acknowledged in a letter written later that he became aware that Mahoney was disputing her ownership of the condominium unit when Mahoney’s attorney “presented me with a document at the [district [cjourt trial that purports to vest ownership to the property in the name of [Mahoney’s ex-]husband.” Despite that information, the parties proceeded with the trial, and LAPOA obtained a judgment against Ma-honey on that date. The record does not contain the evidence presented to the district court.
Contrary to the findings of the trial court, the undisputed evidence shows that Mahoney notified LAPOA that she was not the record owner of the condominium unit on April 11, 2006, before the trial began in the district court. Although it is true that Mahoney did not formally assert her no-nownership in the pleadings before that trial, Mahoney’s attorney plainly indicated that, if the case was not continued, Maho-ney would certainly appeal, which, of course, would give Mahoney the right to amend her pleadings at that time. Thus, LAPOA was on notice during the district-court proceedings that Mahoney was claiming that she was not the record owner of the condominium unit. In light of those circumstances, LAPOA could not reasonably have believed thereafter that Maho-ney was conceding her ownership of the condominium unit.
Any doubt as to Mahoney’s formal position would have been erased when, after appealing the district court’s judgment, Mahoney amended her answer on May 19, 2006, denying every allegation contained in LAPOA’s complaint, including its allegation that Mahoney owned the condominium unit, and asserting as an affirmative defense that LAPOA did not have any contract with Mahoney. Mahoney also stated a counterclaim against LAPOA under the ALAA for filing an action “to force [Maho-ney] to pay a debt which she did not owe.” Mahoney thereafter sent discovery to LA-POA, requesting any evidence supporting its claim that Mahoney owed the delinquent association dues. When LAPOA did not immediately respond to her discovery requests, Mahoney filed a motion to compel. At the hearing on the motion to compel on October 17, 2006, Mahoney’s attorney requested that LAPOA’s attorney write a letter setting out “the facts and specifics on [LAPOA] ’s grounds for filing this lawsuit against [Mahoney].”
Armed with the knowledge that Maho-ney contended that she did not owe the delinquent association dues because she was not the record owner of the condominium unit, in October 2006 LAPOA proceeded to foreclose on a lien that it had secured on the property. LAPOA’s attorney prepared a foreclosure deed that recited the entire title history of the condominium unit. That history set out that the title to the condominium unit had first been vested in Bahama Island Surf & Racquet Club, Inc., in 1988, and that it had since been transferred to Joseph Mahoney II, Maho-ney’s ex-husband, on May 10, 2005. The foreclosure deed, which was dated October 13, 2006, identified Mahoney solely as “the occupant” of the condominium unit. Subsequently, on December 21, 2006, LAPOA amended its complaint to name Joseph Mahoney II as a defendant and as the “owner” of the unit and to designate Ma-honey solely as a “resident” of the unit. See Mahoney I, 4 So.3d at 1134. Despite having all the foregoing information, LA-POA did not dismiss Mahoney as a defendant, see § 12-19-273(2) (requiring a trial *923 court to consider efforts to dismiss “claims that have been found not to be valid”), and persisted in its efforts to obtain a judgment and to enforce that judgment against her.
In its new judgment entered on remand following this court’s decision in Mahoney III, the trial court excused LAPOA’s conduct on the ground that LAPOA had, in fact, exercised due diligence in searching the public records and discovering a divorce-settlement document that indicated that Mahoney owned condominium unit. LAPOA did conduct a title search at some point during the pendency of the circuit-court proceedings. As stated above, a subsequent title search revealed that Ma-honey had never been the record owner of the condominium unit. Furthermore, it is undisputed that LAPOA’s attorney did not obtain the divorce-settlement document until after LAPOA had secured a judgment against Mahoney in the trial court and that LAPOA did not rely on that document in prosecuting the action against Mahoney. Even more to the point, LA-POA could not have relied on the divorce-settlement document to support the validity of its claims. After testifying in the hearing on remand from our decision in Mahoney III that he had only inferred from his reading of some language in the divorce-settlement document that Maho-ney had obtained ownership in the condominium unit in the divorce settlement,[3] LAPOA’s attorney acknowledged that the “public record” still showed “that Joseph Mahoney owns this unit.” Hence, the existence of the divorce-settlement document did not alter the fact that Mahoney was not the “record owner” of the condominium unit — i.e., the only party from whom LAPOA could properly seek association dues under its covenants.[4] See Touchstone v. Peterson, 443 So.2d 1219 (Ala.1983) (holding that property-division provisions of divorce judgment give equitable title to lands described therein and that party awarded such lands becomes “record owner” only upon obtaining valid deed).
The trial court further excused LA-POA’s conduct on the ground that Maho-ney had intentionally made herself unavailable for questioning regarding her ownership of the condominium unit. As the main opinion holds, 84 So.3d at 916, the record does not contain any evidence to substantiate that Mahoney or her attorney willfully evaded such questioning or any evidence from which the trial court reasonably could have inferred that Maho- *924 ney failed to appear in bad faith so that her position as to ownership lacked credibility. The record also does not indicate that LAPOA ever noticed Mahoney’s deposition or that the trial court issued any subpoena compelling her attendance at trial. At any rate, the trial court does not adequately explain how Mahoney’s appearance at trial would have validated LA-POA’s claims. The trial court maintains that LAPOA could have cross-examined Mahoney as to the contents of her divorce settlement and proven that she had acquired ownership of the condominium unit; however, LAPOA did not discover the divorce-settlement document until long after the trial had been completed, and, as set out above, LAPOA’s attorney later acknowledged that the divorce settlement did not make Mahoney the “record owner” of the condominium unit. It seems that whatever testimony Mahoney would have provided would not have changed the fact that Joseph Mahoney II was the record owner of the condominium unit, a fact LAPOA did not even attempt to dispute at trial.[5] See § 12-19-273(6) (requiring court of record to consider “[wjhether or not issues of fact, determinative of the validity of a [party’s] claim or defense, were reasonably in conflict”).
In summary, the undisputed evidence shows that, before LAPOA asserted its claims against Mahoney in the district court, it made no effort to ascertain whether she was the record owner of the condominium unit, see § 12-19-273(1) & (10), although such evidence was available in the public record,[6] see § 12-19-273(3), and LAPOA did not dismiss Mahoney as a defendant after it acquired irrefutable information before and during the circuit-court proceedings that she was not the record owner of the unit. See § 12 — 19— 273(2), (6), and (11). The trial court thus erred in finding that LAPOA had made a reasonable inquiry as to Mahoney’s record ownership “prior to or after commencement of the suit.” Tidwell, 583 So.2d at 244.
As for the other factors set out in § 12-19-273, the trial court did not make any finding relative to the financial position of the parties, see § 12-19-273(4), except insofar as it recited, without supporting evidence, that “the financial position of [LA-POA] is in jeopardy due to nonpayment of dues because it is a not-for-profit entity....” The legislature obviously intended that courts of record would inquire as to the financial position of the parties relative to their respective abilities to pay an award of attorney’s fees. In that regard, LAPOA presented no evidence regarding its financial condition or the impact any award of attorney’s fees would have on its treasury, so the trial court had no basis for limiting its award based on financial reasons.
The. trial court found that LAPOA did not prosecute the action against Mahoney in bad faith or for an improper purpose. See § 12-19-273(5) (requiring court of record to consider “[w]hether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose”). In her brief to this court, Ma-honey points out that LAPOA maintained its action against her long after it realized that she was not the record owner of the condominium unit and that LAPOA even sought in its claims against her the delinquent association dues owed by the previous owner of the condominium unit. LA- *925 POA does not dispute either contention in its brief to this court. Even if LAPOA had been proceeding under an innocent misunderstanding as to the current record ownership of the condominium unit, which contention has been thoroughly rejected by this court, it certainly would have been improper for LAPOA to attempt to recover dues owed by the previous owner. The trial court erred in finding otherwise.
The trial court was also required to determine “[t]he extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy.” § 12-19-273(7). In its judgment, the trial court noted that LAPOA had prevailed on its three claims at both the district-court and the circuit-court levels. Ultimately, however, this court and our supreme court determined that LA-POA did not have any valid claims against Mahoney. Thus, it was Mahoney, not LA-POA, who prevailed on all three claims. The trial court erred in failing to recognize that fact and in basing its limited award, in part, on the erroneous district-court and circuit-court judgments.
Section 12-19-273(9), Ala.Code 1975, requires a court of record to consider “[t]he amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court.” The evidence in the record indicates that Mahoney offered to settle the case by paying in full the delinquent dues owed by Joseph Mahoney II, but that LAPOA insisted on additional payment of a portion of its attorney’s fees, and that the parties did not consummate any settlement. In light of the fact that this court determined that Mahoney did not owe any dues, that statutory factor weighs heavily in favor of Mahoney. The trial court mentioned the settlement positions of the parties in its judgment, but it is apparent that it did not consider those positions in light of the ultimate outcome of the case. In that regard, the trial court erred.
The trial court further erred regarding the reasonableness of the amount of the attorney’s fees incurred by Mahoney. In addition to the errors noted in the main opinion, 84 So.3d at 913, the trial court erred in relying on the fact that Mahoney presented no documentary evidence indicating that she had paid her attorney the full amount of the requested fees. As this court stated in Mahoney III, “an award under the ALAA is designed as a sanction to discourage lawsuits that are groundless in law.” 72 So.3d at 655. The ALAA provides that an award should be “reasonable” in amount in light of the factors set out in § 12-19-273, as well as other relevant factors. Neither the purpose of the award nor the language of the ALAA requires that a movant prove that he or she actually paid the requested amount.
The trial court also erred in concluding that the amount of the attorney’s fee should relate to the amount in controversy. See Willow Lake Residential Ass’n v. Juliano, 80 So.3d 226, 240 (Ala.Civ.App.2010) (rejecting similar argument). Rather, in addition to the factors set out in the ALAA, the trial court should have applied the criteria established in Peebles v. Miley, 439 So.2d 137 (Ala.1983), which include:
“ ‘(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal *926 services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.’ ”
Willow Lake Residential Ass’n, 80 So.3d at 242 (quoting Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988)). Mahoney presented evidence, from both her own attorney and an expert witness, relating to the Peebles factors. As Mahoney argues, their testimony was largely undisputed. Although LAPOA’s attorney asserted that he had never charged a client more than the amount in controversy and that he had incurred only $10,000 in attorney’s fees throughout the litigation, LAPOA did not attack the amount requested by Mahoney as being unreasonable in any respect.
The foregoing errors all necessitate reversal of the judgment of the trial court. Given the prolonged appellate history of this case, as well as the relatively undisputed nature of the evidence in the case, I strongly considered whether I would recommend that this court should simply render an attorney’s fee award for Mahoney, as she requests in her brief. However, I find no binding precedent for such an unusual procedure. I further considered whether I would recommend remanding the case with specific instructions to the trial court as to how to apply the appropriate factors to the evidence. In the end, however, I am convinced by the reasoning set out in the main opinion that the best course of action is to direct that this case be reassigned to another trial judge for the purposes of determining an appropriate award of attorney’s fees based on the appropriate statutory and other factors.

. Apparently, that testimony was the main part of the “recent submissions" from LAPOA upon which the trial court relied.

. The main opinion points out that the invalidity of LAPOA’s claims has already been decided by this court and that the trial court violated the law-of-the-case doctrine by considering that the divorce-settlement document proved that Mahoney did, in fact, own the condominium unit. 84 So.3d at 912-15. Under the law-of-the-case doctrine, "whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to he the facts of the case." Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987) (emphasis added). At the time this court decided in Maho-ney II that LAPOA had no valid claim against Mahoney, this court did not have before it any evidence relating to Mahoney’s divorce-settlement document. Apparently, the trial court believed that that document changed the facts by proving that Mahoney had obtained ownership of the condominium unit; however, as explained above, even if substantial evidence supported a finding that Mahoney did obtain an ownership interest in the condominium unit through her divorce settlement, which is highly questionable, see 84 So.3d at 923, it does not change the crucial fact that Mahoney did not acquire record ownership. Hence, I concur that the trial court was precluded from reconsidering the validity of LAPOA’s claims under the law-of-the-case doctrine.

. In fact, LAPOA obtained a default judgment against Joseph Mahoney II based, in part, on its allegation that he was the sole record owner of the condominium unit.

. The trial court specifically found that the deed upon which Mahoney relied to show that she was not the record owner of the unit was "a matter of existing public record.”