PER CURIAM.
Carol Mahoney (“Mahoney”) appeals from a judgment of the Baldwin Circuit Court awarding her $500 as an attorney fee and costs pursuant to the Alabama Litigation Accountability Act, § 12-19-270 et seq., Ala.Code 1975 (“ALAA”). We reverse and remand.
This is the fourth time these parties have been before this court. In Mahoney v. Loma Alta Property Owners Ass’n, 72 So.3d 649 (Ala.Civ.App.2011) (“Mahoney III ”), we set out the factual and procedural history of the case and the previous appeals thusly:
“In Mahoney v. Loma Alta Property Owners Ass’n, 4 So.3d 1130 (Ala.Civ.App.2008) (‘Mahoney I ’), we set out the facts and procedural history of the ease as follows:
“ ‘Loma Alta Property Owners Association, Inc. (“LAPOA”), sued Carol Mahoney in the Baldwin District Court, claiming breach of contract, account stated, and a property-owners-association lien on real estate occupied by Mahoney. LAPOA alleged that Ms. Mahoney was the owner of unit C-l in Loma Alta Townhomes; that Ms. Mahoney was, therefore, bound by an agreement contained within the *910 condominium declaration for the Loma Alta subdivision to pay property-owners-association fees, assessments, and late charges; and that Ms. Mahoney had failed to pay those fees, assessments, and charges. LAPOA asserted that it was entitled to recover from Ms. Mahoney damages, including late fees, interest, costs, and an attorney fee, and to have a hen on the real estate occupied by Ms. Maho-ney.
“ ‘Ms. Mahoney answered the complaint, admitted that she “owe[d] some money, but not the total amount claimed by [LAPOA],” and asserted that she was entitled to a setoff because LAPOA had failed to make needed repairs on the unit. On April 11, 2006, the district court entered a judgment in favor of LAPOA in the amount of $5,390, plus costs and an attorney fee of $500. Ms. Mahoney appealed that judgment to the Baldwin Circuit Court on April 25, 2006, for a trial de novo.
“ ‘On May 19, 2006, Ms. Mahoney filed an amended answer in the circuit court, generally denying the allegations of LAPOA’s complaint and asserting, among other things, that she did not have a contract with LAPOA. In addition, Ms. Mahoney asserted a claim under the Alabama Litigation Accountability Act (“ALAA”), § 12-19-270 et seq., Ala.Code 1975. On December 21, 2006, LAPOA amended its complaint, naming Ms. Mahoney’s former husband, Joseph Mahoney, as a defendant. LAPOA alleged that Mr. Mahoney was the “owner” of unit C-l in Loma Alta Townhomes and that Ms. Mahoney was a “resident” of the unit. LAPOA also added a claim alleging that, by virtue of the foreclosure of its property-owners-association lien, it was entitled to have Ms. Mahoney “evicted” from unit C-l.
“ ‘The circuit court conducted a bench trial on January 26, 2007, at which only one witness — Mary Garey, the secretary/treasurer of LAPOA— testified. Garey explained that the property-owners-association fees and assessments represent the unit owners’ proportionate share of the cost of maintaining and preserving the common areas of the condominium. Gar-ey testified that Ms. Mahoney had resided in unit C-l of the condominium since March 2000 and that she had paid some of the fees and assessments but that she had stopped paying, contending that she was entitled to set off against the balance the cost of needed repairs that LAPOA had failed to make on the unit Ms.'Mahoney was occupying. Garey stated that, according to the condominium declaration, repairs to a unit are the responsibility of the individual unit owner, not LA-POA. Garey identified a document showing the past-due fees and assessments that, LAPOA claimed, were owed by Ms. Mahoney. Garey testified that Ms. Mahoney had never returned the invoices for fees and assessments to Garey with a request that the invoices be forwarded to someone else. Nor, according to Gar-ey, had Ms. Mahoney ever informed LAPOA that she was not the owner of the unit in which she resided. Garey testified that LAPOA, by virtue of its contract with the owner of each unit, has a lien on any unit for which there are unpaid fees and assessments. Garey said that LAPOA had foreclosed its lien on unit C-l.[1]
“‘On cross-examination, Garey acknowledged that the owner of each unit is solely responsible for payment of the property-owners-association *911 fees and assessments. Garey admitted that LAPOA had no deed showing that Ms. Mahoney was the owner of the unit in which she resided, that LAPOA had no contract with Ms. Ma-honey, and that LAPOA had no document stating that someone other than the owner of the unit was responsible for payment of the fees and assessments on the unit that Ms. Mahoney occupied. On redirect examination, Garey affirmed the truth of the following inquiry by LAPOA’s counsel: “We’re simply asking [the circuit court] to confirm that we’ve got a judgment on this unit, whether it’s owned [by] Ms. Mahoney or whoever it is, because that unit has not paid any dues and assessments, is that right?”
“ ‘The circuit court admitted the following documentary evidence offered by LAPOA: (1) the condominium declaration for the Loma Alta subdivision; (2) a statement of fees, assessments, and late charges sent by LAPOA to Ms. Mahoney on January 24, 2007, indicating a balance due of $6,150; and (3) a “Statement of Lien” filed in the Baldwin Probate Court on October 4, 2004, naming Carol Maho-ney as the owner of “Lot C-l, Loma Alta, as recorded in Map Book 11, Page 176, in the Office of the Judge of Probate, Baldwin County, Alabama.”
“ ‘At the conclusion of Garey’s testimony, LAPOA rested and Ms. Maho-ney’s counsel moved for a “directed verdict,”[2] arguing:
“ ‘ “[T]here’s been no proof of ownership [by] my client, Carol Maho-ney, ... or that she’s bound by any contract that they have failed to present in court showing that she’s responsible for anything....
“‘“[LAPOA has] gone against the wrong person, and that’s why we move for a directed verdict and ask for award of reasonable attorney’s fees for having to fight this.”
“ ‘The circuit court denied the motion. On April 13, 2007, the court entered a judgment in favor of LAPOA and against Ms. Mahoney in the amount of $6,279.10 and awarded LAPOA an attorney’s fee of $5,000. The court did not rule on Ms. Mahoney’s ALAA counterclaim, but we conclude that it was implicitly denied. See Harris v. Cook, 944 So.2d 977, 981 (Ala.Civ.App.2006). On the same day, the circuit court entered a default judgment for the same amount in favor of LAPOA and against Joseph Mahoney. Ms. Mahoney filed a timely notice of appeal to this court on May 15, 2007.
“ 11 Section 35-8-17(4), Ala.Code 1975, a part of a chapter entitled “Condominium Ownership,” provides that “[l]iens for unpaid assessments may be foreclosed by an action brought in the name of the [property owners’] association in the same manner as a foreclosure of a mortgage on real property.”
“ ‘2 In actions tried without a jury, the proper motion is one for a judgment on partial findings, pursuant to Rule 52(c), Ala. R. Civ. P.’
“Mahoney I, 4 So.3d at 1131-33. In Mahoney v. Loma Alta Property Owners Ass’n, 52 So.3d 510 (Ala.Civ.App.2009) (Mahoney II ’), this court further set out the facts and procedural history of the case as follows:
“‘[In Mahoney I,] [t]his court reversed the judgment in favor of Loma Alta Property Owners Association, Inc. (“LAPOA”), holding that LAPOA had wholly failed to prove that Ms. Mahoney was bound to pay the fees, assessments, and late charges claimed by LAPOA because LAPOA’s contract obligated the owner of the condominium unit to pay those charges and the *912 evidence conclusively established that Ms. Mahoney was not the owner of the unit. This court remanded the cause to the circuit court with instructions to adjudicate Ms. Mahoney’s ALAA claim.
“ ‘On remand, the circuit court vacated its judgment in favor of LA-POA, entered a judgment in favor of Ms. Mahoney, and summarily denied Ms. Mahoney’s ALAA claim on September 17, 2008. Ms. Mahoney filed a postjudgment motion on October 2, 2008, complaining that the circuit court had, “without evidence or testimony entered a verdict for [LAPOA] as to the ALAA claim.” She attached to her motion a foreclosure deed executed by LAPOA’s attorney on October 10, 2006, and filed in the Baldwin Probate Court on October 16, 2006, averring that Joseph Mahoney had been the record title owner of the subject property since May 10, 2005.
“ ‘Ms. Mahoney specifically requested a hearing on her postjudgment motion. The circuit court set the motion for a hearing on October 21, 2008. The record before us contains no transcript of the hearing. The parties agree, however, that Ms. Mahoney did not appear, that no evidence was presented, and that counsel for both parties presented oral argument to the trial court at the hearing. On October 28, 2008, the circuit court denied Ms. Mahoney’s postjudgment motion. Ms. Mahoney timely appealed on November 13, 2008.’
“Mahoney II, 52 So.3d at 513-14.
“In Mahoney II, we held that,
“ ‘[i]n the present case, as in Sanderson Group[, Inc. v. Smith, 809 So.2d 823 (Ala.Civ.App.2001) ], the record shows indisputably that LAPOA’s action against Ms. Mahoney was groundless in law. All four of LA-POA’s claims against Ms. Mahoney— breach of contract, account stated, property owner’s lien, and eviction— hinged upon its proving that Ms. Ma-honey was the owner of the property. LAPOA not only failed to prove that Ms. Mahoney was the owner, but it also presented as its only witness at the circuit-court trial someone who acknowledged “that LAPOA had no deed showing that Ms. Mahoney was the owner” of the property. Mahoney [I], 4 So.3d at 1132. LAPOA had access to its own condominium declaration, which
“‘“makes it clear that LAPOA’s remedy is strictly against the owner. As Article VII, Section 7, of the declaration, entitled ‘Effect of Nonpayment of Assessments: Remedies of the Association,’ states: ‘No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or abandonment of his lot.’ ”
“ Mahoney [I], 4 So.3d at 1134. In addition, the record conclusively demonstrates that LAPOA knew, before December 21, 2006, when it amended its complaint in the circuit court, that Ms. Mahoney’s former husband, Joseph Mahoney, was the owner of the property because LAPOA’s attorney had, on October 16, 2006, filed in the Baldwin Probate Court a foreclosure deed averring that Joseph Mahoney had been the record title owner of the subject property since May 10, 2005.’
“Mahoney II, 52 So.3d at 517. We reversed the trial court’s judgment denying Mahoney’s ALAA claim and remanded the cause to the trial court to make an appropriate award pursuant to the ALAA. Id. at 517-18.
*913 “LAPOA petitioned the Alabama Supreme Court for the writ of certiorari, which that court granted. Our supreme court affirmed our conclusion that the trial court had erred in denying Maho-ney’s claim for an award under the ALAA, noting that
“ ‘the determination that the claims asserted by LAPOA against Mahoney in the amended complaint were groundless results from recognition that ownership of the property was a required legal element of each claim and that, at the time LAPOA amended the complaint, LAPOA alleged that Mahoney’s former husband, and not Mahoney herself, was the owner of the property.’
“Ex parte Loma Alta Prop. Owners Ass’n, 52 So.3d 518, 524 (Ala.2010).
“Justice Woodall and Justice Murdock dissented from the majority opinion in Ex parte Loma Alta. Both Justice Woo-dall and Justice Murdock opined in their respective dissents that they would have held that the trial court did not err in determining that LAPOA’s lawsuit against Mahoney was not groundless in law or fact, vexatious, or interposed for any improper purpose; therefore, they opined, the trial court did not err in declining to award Mahoney an attorney fee and costs under the ALAA.
“On remand, the trial court held a hearing, at which Mahoney presented testimony and evidence regarding the costs incurred by Mahoney as a result of LAPOA’s lawsuit, the reasonableness of those costs, and other relevant factors that would support an award under the ALAA. LAPOA presented testimony and evidence regarding the reasonableness of Mahoney’s counsel’s charges and other factors that it felt would support only a minimal award.
“Following the hearing, the trial court entered an order awarding Mahoney an attorney fee of $500. The trial court stated in its judgment that its award was based on ‘the reasons set forth in the [Aabama] Supreme Court’s dissents and [LAPOA’s] recent submissions, [and] which is in line with the amount awarded [as an attorney fee on appeal] by the Court of Civil Appeals.’ ”
72 So.3d at 652-54.
Mahoney appealed the circuit court’s judgment awarding her $500 on her ALAA claim to this court. Id. In Mahoney III, we reversed the circuit court’s judgment, holding that the circuit court did not state specific reasons for its award, as is required by § 12-19-273, Ala.Code 1975. Id. We also held that the basis stated by the circuit court in its judgment — the reasoning of the dissents of Justice Woodall and Justice Murdock in Ex parte Loma Alta Property Owners Ass’n, 52 So.3d 518 (Ala.2010), and this court’s award of $500 in attorney fees in Mahoney v. Loma Alta Property Owners Ass’n, 52 So.3d 510 (Ala.Civ.App.2009) (“Mahoney II”) — were not proper bases on which to determine the amount of its award pursuant to the ALAA. Id. We remanded the cause to the circuit court to enter a judgment on Mahoney’s ALAA claim consistent with our opinion and with the issues as determined in Mahoney v. Loma Alta Property Owners Ass’n, 4 So.3d 1130 (Ala.Civ.App.2008) (“Mahoney I”), Mahoney II, Ex parte Loma Alta, and Mahoney III, because our supreme court’s and our conclusions regarding the issues addressed in those appeals had become law of the case. See Auerbach v. Parker, 558 So.2d 900, 902 (Ala.1989) (“ ‘When a case is remanded to a trial court after a decision on appeal, “issues decided by the appellate court become law of the case and the trial court’s duty is to comply with the appellate mandate (quoting Erbe v. Eady, 447 *914 So.2d 778, 779 (Ala.Civ.App.1984), quoting in turn Walker v. Carolina Mills Lumber Co., 441 So.2d 980, 982 (Ala.Civ.App.1983))).
On remand, the circuit court, on June 23, 2011, entered a judgment again awarding Mahoney $500 on her ALAA claim. The circuit court’s judgment contained extensive findings of fact and conclusions of law. Mahoney subsequently appealed to this court.
The amount of an award of attorney fees under the ALAA is within the sound discretion of the trial court. § 12-19-273; Williams v. Capps Trailer Sales, Inc., 607 So.2d 1272, 1275 (Ala.Civ.App.1992).
On appeal, Mahoney argues that many of the factual findings in the circuit court’s June 23, 2011, judgment are not supported by the record.
“ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999).’ ”
Farmers Ins. Co. v. Price-Williams Assocs., Inc., 873 So.2d 252, 254 (Ala.Civ.App.2003)(quoting City of Prattville v. Post, 831 So.2d 622, 627 (Ala.Civ.App.2002)).
Mahoney first challenges the correctness of the circuit court’s findings concerning whether Loma Alta Property Owners Association, Inc.(“LAPOA”), had a valid claim against her and whether it had made efforts to ensure the validity of its claim against her for past-due homeowners’ association fees. In its June 23, 2011, judgment, the circuit court stated:
“This Court notes that with regards to the original issue of property owners association fees and assessments, [LA-POA] had exercised due diligence in researching the public records and divorce settlement of the Mahoneys, [LAPOA] had determined the validity of its claim before asserting it, [LAPOA] had prosecuted its claim in good faith and for a proper purpose, the issues of fact determinative of [LAPOA’s] claims were reasonably in conflict as evidenced by [LA-POA’s] success in two lower courts, and [LAPOA] had no reason to believe that its claims were improper because it had succeeded in securing a judgment at the district court level and at the circuit court level in a trial de novo, and had Carol Mahoney been present at trial [LAPOA] could have cross-examined her with the divorce settlement evidence later submitted by [LAPOA,] without objection by Carol Mahoney’s counsel, which demonstrated that Carol Mahoney had in fact received ownership in the Loma Alta unit pursuant to her divorce decree.”
As Mahoney points out, there is no evidence in the record that supports the circuit court’s findings that LAPOA had validated its claim by performing a search of the public records. In fact, we stated in Mahoney I that “Garey[, the secretary/treasurer for LAPOA,] admitted that LAPOA had no deed showing that Ms. Mahoney was the owner of the unit in which she resided, that LAPOA had no contract with Ms. Mahoney, and that LA-POA had no document stating that someone other than the owner of the unit was responsible for payment of the fees and assessments on the unit that Ms. Mahoney occupied.” 4 So.3d at 1132. In addition, the circuit court found in its June 23, 2011, judgment that, “on cross-examination, Gar-ey conceded that the deed of public record was in Joseph Mahoney’s name despite *915 Carol Mahoney being the sole resident of the unit....” Furthermore, in Mahoney II this court held that
“the record conclusively demonstrates that LAPOA knew, before December 21, 2006, when it amended its complaint in the circuit court, that Ms. Mahoney’s former husband, Joseph Mahoney, was the owner of the property because LA-POA’s attorney had, on October 16, 2006, filed in the Baldwin Probate Court a foreclosure deed averring that Joseph Mahoney had been the record title owner of the subject property since May 10, 2005.”
52 So.3d at 517. Therefore, it is apparent that any search of the public records would have shown that LAPOA’s claim against Mahoney was not valid.
The circuit court’s findings regarding the Mahoneys’ divorce judgment also are without any basis in the record. LA-POA did not enter the divorce judgment into evidence during the trial on the merits of its action or at any subsequent hearing. The only testimony presented concerning the Mahoneys’ divorce judgment was at the July 27, 2010, hearing on Mahoney’s ALAA claim. At that hearing, LAPOA’s counsel testified:
“[S]ince all these matters went up on appeal [in Mahoney 7], Your Honor, and I couldn’t supplement the record at the time, I, at my own expense, have gone and pulled the divorce decree from the Pi[k]e County Courthouse. And that decree set out that Ms. Mahoney would end up with a residence out of the divorce. I would submit to the Court that I believe that that is just, in fact, this residence.”
LAPOA’s counsel’s testimony is far from conclusive. In fact, it only states his belief that the Loma Alta property is the property awarded to Mahoney in the divorce judgment. As such, his testimony is mere speculation. “[M]ere speculation cannot support a finding of fact.” Greater Mobile Chrysler-Jeep, Inc. v. Atterberry, 11 So.3d 835, 844 (Ala.Civ.App.2008) (citing Arvin-Meritor, Inc. v. Handley, 12 So.3d 669, 685 (Ala.Civ.App.2007) (opinion on return to remand)). Therefore, the circuit court’s findings that the divorce judgment proved that Mahoney owned the Loma Alta property and that that divorce judgment served to validate LAPOA’s claims against Maho-ney are not supported by the record.
Moreover, even if LAPOA’s counsel’s testimony had amounted to more than mere speculation concerning Mahoney’s alleged ownership of the Loma Alta property, it is apparent from his testimony that he did not obtain the divorce judgment until after the case was on appeal—well after the trial on the merits of LAPOA’s claims against Mahoney. Thus, LAPOA’s claims could not have been founded on information contained in the Mahoneys’ divorce judgment.
Furthermore, this court has already held in Mahoney II, which holding was affirmed in our supreme court’s opinion in Ex parte Loma Alta, that LAPOA’s claims against Mahoney were groundless in law. Thus, the doctrine of law of the case prevents the circuit court from now determining that LAPOA had a valid basis on which to pursue its claims against Mahoney. See Auerbach, 558 So.2d at 902.
Mahoney next challenges the circuit court’s findings as they relate to Ma-honey’s credibility. In its June 23, 2011, judgment, the circuit court stated:
“This Court finds that because [Maho-ney] never again appeared before this Court after her district court answer and testimony, because [Mahoney] failed to appear at the circuit court trial and failed to appear at numerous, subsequent hearings wherein there was ade *916 quate opportunity for testimony to be heard as well as for cross-examination by [LAPOA], that [Mahoney’s] attorney purposefully kept [Mahoney] away from all proceedings so that the Court and/or [LAPOA] could not examine her regarding the new defense she had asserted which was contrary to her assertions and testimony in district court; this Court finds that [Mahoney] misled [LA-POA] and the Court and is wholly lacking in credibility in that her own sworn pleadings and testimony are completely contrary, inconsistent, and not credible or due to be considered due to her willful refusal to participate in the proceeding, thereby precluding any examination of her by [LAPOA] or the Court.”
The circuit court made much of the fact that Mahoney changed her position between the district court proceeding and the circuit court proceeding by adding a defense that she was not the record owner of the unit, both in the above passage and elsewhere in its judgment, where it stated that “[t]his Court heard undisputed evidence and testimony from [LAPOA] that [Mahoney] stated to the District Court under oath and while represented by the same lawyer that the unit belonged to her and that she owed some of the monies claimed but not all of them.... ” We note that ‘“[a] trial de novo means that the slate is wiped clean and a trial in the Circuit Court is had without any consideration being given to prior proceedings in another court.’ ” Ex parte Dison, 469 So.2d 662, 665 (Ala.1984)(overruled on other grounds by Ex parte City of Dothan, 501 So.2d 1136 (Ala.1986)) (quoting Yarbrough v. City of Birmingham, 353 So.2d 75, 78 (Ala.Crim.App.1977)). Therefore, Mahoney was not precluded from adding an additional defense in the circuit court proceedings. Additionally, the record in the circuit court proceedings does not contain any evidence of testimony given by Mahoney in the district court. Because the circuit court is to view an appeal for a trial de novo on the merits of the information presented to it during that proceeding, rather than in light of any purported testimony in the district court, and because the transcript of the July 26, 2007, hearing in the circuit court contains no reference to Mahoney’s testimony or pleadings in the district court, the circuit court’s finding that Mahoney is not credible because she added a new defense that may have conflicted with her pleadings or testimony in the district court is not supported by the record and is without foundation.
The circuit court further appears to take great issue with the fact that Maho-ney did not appear at the July 26, 2007, hearing in the circuit court or at any subsequent hearings, citing her absence as a reason to doubt her credibility. However, Mahoney was under no obligation to appear at any of the hearings in the circuit court — the record does not contain a subpoena requiring her presence. Moreover, the circuit court’s findings that Mahoney’s testimony lacks credibility and that Maho-ney never appeared in the circuit court are difficult to reconcile. It is clear from the record that Mahoney never testified in the circuit court, either in person or by way of affidavit. Therefore, we see no support for the circuit court’s finding that Maho-ney’s testimony, of which there was none, lacks credibility.
The circuit court also attacked the credibility of Mahoney’s counsel, stating that
“when this Court asked several questions of [Mahoney’s] counsel regarding the reason for [Mahoney’s] failure to appear that counsel for [Mahoney] responded that she would lose her job, that she worked for an attorney in Mobile, and that his name was Joseph last *917 name unknown; this Court later and independently learned that counsel for [Mahoney] was aware of the identity of Mahoney’s employer at the time but did not provide his identity to the Court.”
The circuit court also stated that “Maho-ney’s attorney purposely kept [Mahoney] away from all proceedings so that the Court and/or [LAPOA] could not examine her regarding the new defense she had asserted which was contrary to her assertions and testimony in district court.” These findings are wholly unsupported by the record. The record contains no evidence that could lead to an inference that Mahoney’s counsel misled the circuit court regarding Mahoney’s employer or that he had purposely kept Mahoney from appearing in the circuit court. Moreover, as we concluded above, Mahoney was under no obligation to appear in the circuit court.
It further appears from the circuit court’s judgment that the circuit court believed that LAPOA had valid claims against Mahoney and should have prevailed on the merits of its claims. The circuit court stated in its June 23, 2011, judgment that,
“despite [LAPOA’s] prevailing at both the district court and circuit court levels based on [Mahoney’s] actions over several years holding herself out to the public and [LAPOA] as the responsible party and Owner, the [Court of Civil Appeals] reversed the judgment in favor of [LAPOA] based on the issue of record ownership stating that [LAPOA] did not have a contract with [Mahoney].”
(Emphasis added.) In other parts of its judgment, the circuit court stated that Ma-honey had “misled” LAPOA and the circuit court and that Mahoney’s defense was “disingenuous.”[1] Regardless of the circuit court’s view of the case, the issue of Maho-ney’s ownership of the unit has been conclusively decided by this court’s opinion in Mahoney I. The doctrine of law of the case precludes the circuit court from disregarding our opinion in Mahoney I and determining that Mahoney owned the Loma Alta property. See Auerbach, 558 So.2d at 902.
Mahoney also challenges some of the circuit court’s factual findings relating to the issue of the reasonableness of Maho-ney’s counsel’s attorney fees. The circuit court stated in its June 23, 2011, judgment:
“[0]n cross-examination, [Mahoney’s] second witness testified that attorney’s fees in excess of $30,000.00 were not reasonable since the amount in controversy in this case was only approximately $5,000.00 to $6,000.00 of past due property owners association fees. [Ma-honey’s] second witness testified that attorney’s fees in the amount of approximately $10,000.00 would be reasonable for the trial process and appeals process .... ”
Mahoney’s second witness was David Hudgens, a local attorney. A review of Hudgens’s testimony shows that his testimony does not support these findings by the circuit court. The following exchange occurred during the cross-examination of Hudgens at the July 27, 2010, hearing on the issue of the reasonableness of Maho-ney’s claimed attorney fees:
“[LAPOA’s counsel]: Is it your testimony to Judge Wilters that approxi *918 mately $80,000 legal fee is an appropriate fee and a reasonable request in a case that sought approximately 5 or $6,000 in back property owners association dues?
“[Hudgens]: Well, ... normally, I would say no. But I think this is a real unusual case, in that to start with she was sued when there was, as I see it, no basis for suing her. I believe Court of Civil Appeals said there was no basis for suing her.
“And in order to obtain the result that his client — in order to compensate his client for the expenses that she spent on the litigation and the efforts it took to get a court order to enforce those rights, that is to get a court order — the writ of mandamus, through the writ of mandamus that basically got us where we are, unfortunately, I do think that’s a reasonable fee.”
Nowhere in his testimony did Hudgens state that Mahoney’s counsel’s attorney fee was unreasonable. On the subject of the $10,000 in attorney fees that LAPOA’s counsel stated that he had accrued, Hud-gens replied that he thought it was “amazing” that LAPOA’s counsel had accrued such a meager fee during the entire course of the case. Therefore, we find no support for the circuit court’s above-stated findings.
Because the circuit court’s judgment contains numerous findings of fact that are clearly erroneous, and because the circuit court’s judgment contains conclusions of law that run afoul of the doctrine of the law of the case, we again reverse the judgment of the circuit court.
The judgment that was before us in Mahoney III and the judgment that is before us now indicate that the original trial judge is having difficulty putting aside his original view of the ALAA claim, which we held was erroneous in Mahoney II.
In C.D.S. v. K.S.S., 978 So.2d 782 (Ala.Civ.App.2007), which involved an analogous situation, this court stated:
“ ‘In cases where there is no proof of personal bias, the Second Circuit has persuasively enumerated factors which should be considered by an appellate court in deciding whether to exercise its supervisory authority to reassign a case. These criteria include:
“ ‘ “(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.”
“ ‘United States v. Robin, 553 F.2d 8, 10 (2d Cir.1977) (en banc)....’
“[United States v. White,] 846 F.2d [678] at 696 [ (11th Cir.1988) ].... We adopt and apply the factors set out in United States v. Robin, 553 F.2d 8 (2d Cir.1977), to this matter. In doing so, we are mindful of the statement the United States Court of Appeals for the Second Circuit made in Robin, i.e., that reassignment on remand ‘does not imply any personal criticism of the trial or sentencing judge.’ 553 F.2d at 10. That being noted,
“ ‘[i]n the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his attention, see, e.g., United States v. Brown, 470 F.2d 285, 288 (2d Cir.1972) (court twice used improper sen- *919 fencing procedure), reassignment to another judge may be advisable in order to avoid “an exercise in futility in which the Court is merely marching up the hill only to march right down again.” United States v. Tucker, 404 U.S. 443, 452, 92 S.Ct. 589, 594, 30 L.Ed.2d 592 (1972) (Blackmun, J., dissenting).’
“Robin, 553 F.2d at 11. Applying the Robin factors to this case, we have determined that reassignment of this case to a different circuit court judge is warranted because it is likely that ‘“the original judge would have difficulty putting his previous views and findings aside.”’ United States v. Martin, 455 F.3d 1227, 1242 (11th Cir.2006)(quoting United States v. Torkington, 874 F.2d 1441, 1447 (11th Cir.1989)). The reassignment of this case to a different circuit court judge is also ‘advisable to preserve the appearance of justice.’ Robin, 553 F.2d at 10. Additionally, we do not believe that reassigning this case to a different circuit court judge would entail ‘waste ... out of proportion to any gain in preserving the appearance of fairness.’ White, 846 F.2d at 696.”
978 So.2d at 790-91.
Based on the authority of C.D.S., we remand the case with instructions that it be reassigned to another circuit judge for the determination of an appropriate award pursuant to the ALAA.
Mahoney’s and LAPOA’s requests for an attorney fee on appeal are denied.[2]
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing.
THOMAS, J., concurs in part and dissents in part, with writing, which THOMPSON, P.J., joins.

. We note that the defense — that Mahoney was not the record owner of the unit — which defense the circuit court labels as "disingenuous,” is the very defense upon which this court based its reversal of the circuit court’s judgment in Mahoney I. It is also the same defense that this court used as a basis for its holding in Mahoney II that LAPOA's claims against Mahoney were groundless in law, and upon which our supreme court based its affir-mance of our opinion in Mahoney II in Ex parte Loma Alta.

. Our denial of Mahoney’s request for an attorney fee on appeal should not be viewed as a conclusion by this court that Mahoney is not due any award for the attorney fee she incurred in prosecuting this appeal; rather, the trial court should consider the added fee incurred by Mahoney during this appellate proceeding when it determines a proper award under the ALAA.