IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 16, 2011 Session

# CASSANDRA LYNN RUDD
v.
# HOWARD THOMAS RUDD

**Appeal from the Hardin County General Sessions Court**
**No. 6677     Daniel L. Smith, Judge**

---

**No. W2011-01007-COA-R3-CV - Filed December 22, 2011**

---

This appeal concerns post-divorce parenting time. In the first appeal in this case, this Court reviewed the trial court's denial of any parenting time for the appellant father with his daughter. This Court remanded the case for a hearing to determine whether parenting time with the father would result in substantial harm to the parties' daughter. On remand, the trial court held a hearing in which the evidence consisted of the mother's testimony on her observations of the daughter's reaction when the topic of the father arose. Based on this, the trial court again denied both supervised and unsupervised visitation to the father, and enjoined the father from contacting his daughter in any fashion. The father appeals. We find the evidence insufficient to support complete denial of parenting time, vacate the trial court's order, and remand the case for further proceedings before a different trial judge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court**
**is Affirmed in Part, Vacated in Part, and Remanded for Reassignment**
**and Further Proceedings.**

HOLLY M. KIRBY, J. delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Curtis F. Hopper, Savannah, Tennessee for Defendant/Appellant Howard Thomas Rudd.

Terry L. Wood, Corinth Mississippi for Plaintiff/Appellee Cassandra Lynn Rudd.

## OPINION

### FACTS AND PROCEEDINGS BELOW

Defendant/Appellant Howard Rudd ("Father") and Plaintiff/Appellee Cassandra Rudd ("Mother") were married in 1991, had a son born in 1992 and a daughter ("Daughter") born in 1995, and their final decree of divorce was entered in 2009. This is the second appeal in this case, and concerns only Father's parenting time with Daughter.[1]

The facts in this case are fully set forth in this Court's Opinion in the first appeal. *See Rudd v. Rudd*, No. W2009-00251-COA-R3-CV, 2009 WL 4642582 (Tenn. Ct. App. Dec. 9, 2009) (hereinafter "*Rudd I*"). We need not repeat them here. In sum, in the parties' divorce proceedings, the trial court below found that an incident occurred in 2007, in which Father inappropriately touched Daughter on top of her pajama bottoms between her legs and also under her t-shirt.[2] At the time, Daughter was thirteen years old.

Based on this factual finding, on January 9, 2009, the trial court entered a final decree and parenting plan in which Father was denied any parenting time with Daughter. In addition, Mother was permitted to move with the parties' children to Texas. Father appealed.

In the first appeal, this Court held that, in order to completely deny visitation to a parent, "there must be definite evidence that visitation would result in harm to the child." The appellate court went on to say:

> Although not specifically stated by the trial court, but implied in its findings, is a determination that visitation may be harmful to [Daughter]. However, the law in Tennessee requires more than mere inferences to deny a parent time with his children. . . . The trial court made no findings that Father would "jeopardize" [Daughter] during visitation. However, even if the trial court had determined that visitation with Father would harm [Daughter], it would not end the required analysis. While the "paramount consideration" in crafting a visitation plan is the welfare of the child, it is clear public policy of this state that the non-custodial parent be awarded reasonable visitation in order to

---

[1]The parties' son has reached majority and he is not at issue in this appeal.

[2]Father was acquitted of criminal charges arising out of this incident, but in the divorce proceedings, after assessing the credibility of the witnesses, the trial court below found that the incident of inappropriate touching occurred. This factual finding was affirmed in the first appeal. *See Rudd I*, 2009 WL 4642582, at *5.

maintain the parent-child relationship. The trial court may "restrict, suspend, or terminate visitation rights" based upon "clear and definite evidence" that visitation would harm the child. "But absent such a finding, the public policy of this state is that the court *shall* 'grant such rights of visitation as will enable the child and non-custodial parent to maintain a parent-child relationship.' Furthermore, it is incumbent on "persons seeking to restrict or eliminate visitation," in this case Mother, to "demonstrate that there is probable cause that the child will be placed at risk if visitation is permitted." "The Tennessee Supreme Court requires this proof be 'definite.' " This effectively creates a presumption against severely limiting or denying visitation completely. Consequently, the trial court must adopt the least restrictive visitation plan "available or workable as a practical matter."

***Rudd I***, 2009 WL 4642582, at *8 (citations omitted). The appellate court in ***Rudd I*** carefully reviewed the record to determine whether it contained sufficient evidence to support a finding that any form of visitation or contact with Father would harm Daughter. It found the evidence insufficient:

> We have reviewed the record and find that as it stands, it does not support a finding by "clear and definite" evidence that complete denial of visitation is the least restrictive plan available. . . . . Consequently, we must remand this case to the trial court for it to receive additional evidence on the harm caused to [Daughter] by visitation with Father. After receiving additional evidence, the trial court is directed to make the required findings and to create the least restrictive visitation plan as available and practical, bearing in mind that [Daughter's] welfare is of paramount consideration.

*Id.* at *9. Thus, on remand, the trial court was charged with the responsibility for crafting the least restrictive visitation plan for Daughter, with the proviso that a complete denial of visitation or conduct must be premised on clear and definite evidence.

On remand, the trial court conducted the required hearing on August 16, 2010. At this hearing, the trial court heard testimony from both Mother and Father. There were no other witnesses, and the only documentary evidence consisted of a letter that Father wrote to Daughter and a computer screenshot from Facebook.

In her direct testimony, Mother was asked a number of questions related to Daughter's reaction to Father's attempts to make contact with her, by sending her a gift and note in the mail and sending her a Facebook "friend" request via computer, and about Daughter's reaction when Father traveled to Texas and visited the parties' son for lunch at the son's

school. Predictably, these questions were met with hearsay objections, to the extent that they sought testimony on Daughter's oral or written statements, and those objections were sustained by the trial court. Mother was permitted to testify that Daughter rejected Father's overtures and was upset by them, and was also upset at Father's unannounced trip to Texas to see her brother. Mother said that when the topic of Father arises, Daughter gets upset and angry and "does not want to discuss it." Because of this, Mother stated, she avoids talking with Daughter about Father.

In her testimony, Mother was asked about counseling for Daughter. Mother testified that, in the three and a half years since the incident of alleged abuse by Father, Daughter made two visits to a free counseling service recommended by Daughter's school. After that, Daughter indicated that she was not ready to talk to a counselor, and so she did not go back. Mother stated that Daughter's anger would be the only reason she would need counseling from the events in her past. At no point does the record reflect that Daughter indicated to Mother a desire to resume counseling. Mother also testified that Daughter has now chosen to be home schooled in Texas, and indicated that the reason for Daughter's request to be home schooled was one that did not involve Father.

Father testified as well. Father said that if it were Daughter's preference to not see him at this point in her life, he would not want the Court to force his Daughter to visit him. He did not believe that the decision was made by Daughter and did not think that she was capable of making that sort of decision at her age. Father testified that he wanted to visit his daughter and felt it was his right to visit her.

After receiving proposed findings of fact from the parties' attorneys, on December 30, 2010, the trial court entered a written order on the parenting plan with respect to Daughter. The trial court found:

> 2. The daughter of the parties, [Daughter], who was the victim of child abuse by Father, is still struggling emotionally with the effects of that abuse. In particular [Mother] testified, and the Court finds that testimony credible, that the daughter becomes upset and angry when Father is the subject of conversation in her presence and also is upset and angry when Father attempts communication with her by various means including Facebook. Father tried to send a gift to [Daughter] which emotionally upset her, and she sent the gift back.
>
> 3. [Daughter] has attempted counseling since the divorce but did not feel she was ready for such counseling at that time. She has recently indicated to

Mother a desire to resume counseling in order to help her deal with the emotional issues pertaining to the sexual abuse history with Father.

4. There is no testimony that Father had received any counseling concerning the sexual abuse perpetrated on his daughter.

. . . .

8. The court is of the opinion and finds that any unsupervised visitation of Father with [Daughter] would be harmful due to sexual abuse perpetrated by Father on [Daughter], and it would be emotionally harmful to her. The court finds that any supervised parenting time would be emotionally harmful to [Daughter] at this time. The court further finds that communication between Father and [Daughter] would be detrimental to her emotional welfare and therefore Father shall not be permitted any forms of contact, such as telephone, e-mail, Facebook or other similar internet social group contact, with [Daughter] at this time. Mother is ordered to obtain counseling for [Daughter] to help her deal with the emotional issues pertaining to the sexual abuse history with Father. Should counseling result in recommendations for limited or restricted contact between [Daughter] and Father, the court upon proper notice and hearing will reconsider some type of contact between Father and Daughter.

. . . .

12. Father shall have the parental rights of Tennessee Code Annotated 36-6-110 as to [Daughter], expect and to the extent that they may be limited by the ruling herein.

Thus, the trial court concluded from the evidence that any visitation, supervised or otherwise, or any contact with Father would be harmful to Daughter. It granted Father no parenting time and enjoined him from attempting to contact Daughter. Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father contends that the trial court erred in denying him any parenting time with Daughter, and in enjoining him from contacting her. Father also contends that the trial court failed to carry out this Court's order on remand as set forth in the Court's opinion in **Rudd I**. Finally, Father argues that the trial court based its decision to deny visitation on inadmissible hearsay evidence.

Mother argues that the trial court did not err in continuing to deny any parenting time to Father and in enjoining Father from contacting Daughter. Mother also argues that the

evidence Father alleges to be hearsay is admissible and was properly considered by the trial court.

Because this case was tried before a trial judge sitting without a jury, we review the trial court's findings of fact *de novo* upon the record with a presumption of correctness for the findings of fact, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the trial court's credibility determination will be given great weight by this Court. *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997).

## ANALYSIS

We reiterate at the outset that the trial court's factual finding, that the incident of sexual abuse of Daughter by Father in fact occurred, was affirmed in the first appeal and is not at issue in this second appeal. We also note that, in the hearing on remand, the trial court credited Mother's testimony, and the trial court's decision on Mother's credibility is not raised as an issue on appeal. Therefore, in evaluating the sufficiency of the evidence in the hearing on remand, to the extent that Mother's testimony was admitted into evidence, we accept it on appeal as credible.

In *Rudd I*, the Court discussed at some length the proof required for a trial court to eliminate a parent's visitation with his child:

> "[T]he non-custodial parent's visitation 'may be limited, or eliminated, if there is definite evidence that to permit ... the right would jeopardize the child, in either a physical or moral sense."[*Eldridge v. Eldridge,* 42 S.W.3d at 82, 85 (Tenn. 2001)](quoting *Weaver v. Weaver,* 261 S.W.2d 145, 148 (Tenn. Ct. App.1953)); *see also* Tenn. Code Ann. § 36-6-301 (2009) and [*Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)]. As this court has previously stated:
>
>> Because of the legal and psychological significance of a parent's visitation rights, persons seeking to restrict or eliminate visitation must demonstrate that there is probable cause that the child will be placed at risk if visitation is permitted. The Tennessee Supreme Court requires that this proof must be "definite," *Suttles v. Suttles,* 748 S.W.2d at 429, and Tenn. Code Ann. § 36-6-30[1] requires that the proof demonstrate that visitation is "likely" to endanger the child's physical or emotional health." These evidentiary standards have effectively

-6-

> created a presumption against severely circumscribing or denying visitation to non-custodial parents. Such drastic measures are only appropriate when arrangements less detrimental to the parent-child relationship are not available or workable as a practical matter.
>
> **Bueno v. Todd**, No. W2005-02164-COA-R3-CV, 2006 WL 2106006 at *6 (Tenn. Ct. App. [July 31,] 2006)(quoting **Wix v. Wix**, No. M2000-00230-COA-R3-CV, 2001 WL 219700 at *11(Tenn. Ct. App.[Mar. 7,] 2001)). "[T]ermination of visitation, which has the practical effect of terminating the parent-child relationship, must be supported by specific findings that visitation by the non-custodial parent will result in physical, emotional, or moral harm to the child.["] **In the Matter of Z.A.W.**, [No. W2005-01956-COA-R3-JV,] 2006 WL 1627180, at *5 [Tenn. Ct. App. June 12, 2006] (citing **Eldridge**, 42 S.W.3d at 85).
>
> Accordingly, there is a specific process the trial court must follow when limiting, suspending or terminating visitation. First, the trial court must make a specific finding, based on definite evidence, that visitation would cause harm to the child. **Eldridge**, 42 S.W.3d at 85. After making this finding, the trial court must then determine the least restrictive visitation plan as available and practical. **Bueno**, 2006 WL 2106006, at *6. In determining the least restrictive visitation plan, the trial court must make specific findings, based on definite evidence, that any less restrictive visitation would be harmful to the child. **Id**. The burden of proof on both the issue of harm and the least restrictive visitation plan, is on the party seeking to restrict visitation. **Id.** In making these determinations, the trial court must bear in mind that "it is the public policy of the state of Tennessee that courts *shall* grant parenting time with the non-custodial parent unless visitation will harm the child." **Kershaw v. Kershaw**, No. M2009-00151-COA-R3-CV [,2009 WL 4039262, at *3] (Tenn. Ct. App. Nov. 20, 2009) (emphasis added).

**Rudd I**, 2009 WL 4642582, at *7 (errors in original citations corrected in brackets). The appellate court in **Rudd I** stated that Mother was required "to 'demonstrate that there is probable cause that the child will be placed at risk if visitation is permitted.' " **Id.** at *8 (quoting **Bueno v. Todd**, No. W2005-02164-COA-R3-CV, 2006 WL 2106006, at *6 (Tenn. Ct. App. July 31, 2006)). It found expressly that the evidence in the appellate record, "as it stands, . . . does not support a finding by 'clear and definite' evidence that complete denial of visitation is the least restrictive plan available." **Rudd I**, 2009 WL 4642582, at *9. The appellate court's directions to the trial court on remand were clear:

-7-

Upon rehearing, the trial court is directed to make specific findings, based on clear and definite evidence that visitation would be harmful. The trial court must then consider whether any visitation plan less restrictive than a complete denial, is available in order to maintain the parent-child relationship, without causing harm to [Daughter]. The trial court is to then develop the least restrictive visitation plan available for [Daughter]. The trial court should include the rights of the non-custodial parent as appropriate. The trial court must keep in mind that while the welfare of the child is of paramount concern, it is to adopt the least restrictive visitation plan available so as to foster the parent-child relationship.

*Id.* at *9.

On remand, after conducting the mandated hearing, the trial court issued an order finding that any type of visitation or contact between Father and Daughter would be "emotionally harmful" to Daughter and "detrimental to her emotional welfare." It required Mother to obtain counseling for Daughter, and stated that if Daughter's counseling resulted in "recommendations for limited or restricted contact" between Father and Daughter, it would reconsider. Thus, unlike the order appealed in *Rudd I*, on remand, the trial court made express findings that any contact between Father and Daughter would be harmful.

Unfortunately, from our careful review of the record, this finding is in no way supported by "clear and definite" evidence. The evidence in the record consists of the factual finding of an incident in which Father inappropriately touched Daughter. This evidence was found in the first appeal to be insufficient in and of itself to warrant a complete denial of parenting time. In the hearing on remand, the only evidence added to the equation was Mother's testimony that Daughter rejected Father's gift and note, as well as his Facebook friend request, and that she becomes upset or angry when the topic of Father arises. That is the totality of the evidence on which the trial court based its decision. Despite the fact that Daughter was sixteen at the time of the hearing on remand, there was no testimony by Daughter, no clear evidence in the record of Daughter's thoughts or feelings about Father or the prospect of any future relationship with Father, no opinion or recommendation by a mental health professional, nothing that would amount to "clear and definite evidence" that joint counseling for Father and Daughter, supervised visitation, written communication, or other limited, controlled contact or efforts toward establishing contact would be emotionally harmful to Daughter.

The requirement of clear and definite evidence to support a denial of any parenting time or contact whatsoever is not a rote or mechanical requirement, a hoop for the trial court to jump through. The stakes of an erroneous or unfounded decision are high. On one hand, if any

-8-

type of contact with Father would in fact be emotionally injurious to Daughter, then a court order requiring such contact may have profound consequences to Daughter's well-being. On the other hand, eliminating any contact between Father and Daughter whatsoever "has the practical effect of terminating the parent-child relationship," and carries with it profound consequences to both Father and Daughter.

The lack of clear and definite evidence in the record after remand presents this Court with a dilemma. In any other type of case, we would simply hold that Mother, as the party seeking extraordinary relief, did not meet her burden of proof, and did not rebut the presumption against denying visitation to Father. *See Rudd I*, 2009 WL 4642582, at *7. However, given the nature of the incident of inappropriate touching that occurred, Daughter's age, the lack of any counseling, joint or otherwise, for either Father or Daughter, the distance between Daughter's home and Father's home, and the fact that Daughter is home-schooled, this Court is in no position to order or implement a parenting plan for Father as to Daughter.

The prospect of remanding the case to the trial court below is dispiriting as well. The directions on remand in *Rudd I* could not be more clear. Despite this, counsel for Mother proffered evidence for the hearing that was weak indeed, patently insufficient to meet the "clear and definite" standard. Despite this, the trial court accepted Mother's evidence and deemed it sufficient to justify a complete elimination of any contact between Father and Daughter. There is no reason for this Court to believe that another remand to the trial judge below would yield compliance with this Court's directive in *Rudd I*.

This Court has held that "inferior courts must abide the orders, decrees and precedents of higher courts." *Weston v. State,* 60 S.W.3d 57, 59 (Tenn. 2001) (citing *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976)). When a trial court receives a case that has been remanded, the trial court must strictly comply with the appellate court's mandate, and typically lacks the power to deviate from the terms of the appellate court's mandate, absent either permission from the appellate court or extraordinary circumstances. *Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481, at *3; 2004 Tenn. App. LEXIS 167, at *8 (Tenn. Ct. App. Mar. 16, 2004). "An appellate court may . . . order reassignment of a case to a different judge in the exercise of the court's inherent power to administer the system of appeals and remand." *See* 5 Am. Jur. 2d *Appellate Review* § 754 (2007). Some factors to be considered by an appellate court in deciding whether to exercise its supervisory authority to reassign a case are: (1) whether on remand the trial judge can be expected to follow the dictates of the appellate court; (2) whether reassignment is advisable to maintain the appearance of justice; 3) whether reassignment risks undue waste and duplication. *Id.* (citing *United States v. Lyons*, 472 F.3d 1055, 1071 (9th Cir. 2007) (citing *United States v. Peyton*, 353 F.3d 1080, 1091 (9th Cir. 2003)). "In the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his

attention . . . , reassignment to another judge may be advisable in order to avoid 'an exercise in futility in which the Court is merely marching up the hill only to march right down again.' " *Mahoney v. Loma Alta Prop. Owners Ass'n., Inc.*, No. 2100909, 2011 WL 5436274, at *10 (Ala. Civ. App. Nov. 10, 2011) (quoting *United States v. Tucker*, 404 U.S. 443, 452, 92 S.Ct. 589, 594 (1972) (Blackmun, J., dissenting) (internal citation omitted)). *See also Bayer v. Global Renaissance Arts, Inc.*, 898 So.2d 995, 996 (Fla. Dist. Ct. App. 2005) ("the trial judge's . . . resistance to follow[ing] this court's prior mandate indicates an unwillingness to follow our ruling in a fair and impartial manner," so case reassigned to different trial judge.).

In the case at bar, it appears that the trial judge had difficulty putting his previous views and findings aside and complying with the mandate on remand. We find as well that reassignment to a different trial judge is advisable to preserve the appearance of justice. Finally, reassigning this case to a different trial judge will not "entail 'waste . . . out of proportion to any gain in preserving the appearance of fairness.' " *Mahoney*, 2011 WL 5436274, at *10 (quoting *United States v. White*, 846 F.2d 678, 696 (11th Cir. 1988)). Therefore, under the specific circumstances of this case, we find that reassignment to a different trial judge is warranted and appropriate.

We affirm the trial court's order insofar as it requires Mother to obtain counseling for Daughter. The remainder of the trial court's order is vacated, and the cause is remanded to the presiding judge of the 24th Judicial District, with instructions to reassign this case to another trial judge for a rehearing in compliance with *Rudd I* and this Opinion, and other proceedings consistent with this Opinion.

## CONCLUSION

The decision of the trial court is affirmed in part, vacated in part, and the cause is remanded for reassignment and further proceedings consistent with this Opinion. Costs on appeal are assessed against Appellee Cassandra Lynn Rudd, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE